Mario Pittoni, J.
This is an action to have this coiirt declare certain sections of Ordinance No. 40 of the Town of Hempstead entitled “ Operation of Tow Cars ” unconstitutional and void and to enjoin any action and enforcement thereunder.
I. The major attack is on section 12.0 which reads as follows: “ Sec. 12.0 It shall be unlawful for any person to drive along any street or bridge in the Town of Hempstead and solicit towing work. Solicitation of towing work by the operator or other occupant of a tow car while parked on any street or bridge is also prohibited. A tow ear operator shall not proceed to the scene of a disabled motor vehicle without having been requested or notified to do so by the owner or his authorized representative or the Police. Responding to a call, merely upon notification from gas station attendants, taxicab drivers *1056 or other unauthorized persons shall be considered in violation of this provision. ’ ’
However, to get a clearer picture of the objectives of the Town Board, the legislative body that passed this ordinance, section 12.1 should be given more than passing notice. It reads as follows: “ Sec. 12.1 The owner or driver of any disabled motor vehicle shall have the right to require the services of any available tow car and it shall be unlawful for any owner or driver, or helper of any tow car to refuse to render such services if such owner or driver of such disabled motor vehicle is able and willing to pay the fee prescribed in the schedule of prices filed by the owner of such tow car with the Town Clerk provided, however, that it is physically possible for such tow car to tow such disabled motor vehicle and that such tow car is not already going to or returning from a job.”
In its legislative findings, section 1.0, the Town Board said: “ Sec. 1.0 It is hereby declared and found that it is of vital importance to the traveling public that disabled vehicles be removed from the highways as promptly as possible, that delay in removal .results in retarding the movement of traffic unnecessarily and causes street accidents and that the towing of disabled motor vehicles in streets of the Town of Hempstead is a matter affecting the public interest and consequently should be subject to supervision and administrative control for the purpose of safeguarding the public against fraud and exorbitant rates and similar abuses. ’ ’
We start with the fundamental presumption that the legislative act of a legislative body, in this case the ordinance of the Town Board, is constitutional. The party assailing the ordinance on the ground of unconstitutionality or other invalidity has the burden of proving that there is no reasonable ground to sustain the ordinance. Chief Judge Conway has stated this principle in Wiggins v. Town of Somers (4 N Y 2d 215, 218-219) as follows: “Legislative enactments are presumed to be constitutional, i.e., they are presumed to be supported by facts known to the Legislature (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415; East New York Sav. Bank v. Hahn, 293 N. Y. 622, 627-628, affd. 326 U. S. 230; United States v. Carolene Prods. Co., 304 U. S. 144,152; Borden’s Co. v. Baldwin, 293 U. S. 194, 210). While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540-541; Matter of Fay, 291 N. Y. 198, 206, 207; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 79). Particularly apropos is the rule that the law may not be arbitrary *1057 and it must be reasonably related to some manifest evil (Defiance Milk Prods. Co. v. Du Mond, supra; Fisher Co. v. Woods, 187 N. Y. 90; Nebbia v. New York, 291 U. S. 502, 537), which, however, need only be reasonably apprehended (Matter of Stubbe v. Adamson, 220 N. Y. 459, 469). And we must be guided by the familiar principle that it is only as a last resort ’ that courts strike down legislative enactments on the ground of unconstitutionality (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367; Defiance Milk Prods. Co. v. Du Mond, supra, p. 541).”
The plaintiffs are in the tow car business and are licensed tow car operators in the Town ,of Hempstead. For the purpose of this action they have agreed with the defendants: That motor vehicle accidents happen at all times and places during the day and night and at times when telephones are not always readily accessible; that the condition of the operator of a motor vehicle involved in an accident is sometimes that of being dazed, confused and unable to think clearly; that the policeman at the scene of the accident is always ready to act quickly and clearly because of his training; that there is a necessity for the regulation of the tow car industry; and that a past abuse was too many tow cars at the scene of a motor vehicle accident. In this latter respect plaintiff Albrecht testified that the number of tow cars at the scene of an accident on the average occasion is about five or six; that he usually operated his tow cars with one man and sometimes two; that on occasion there are as many as three men on other tow cars; and that it is possible for 15 men to be at the scene of an accident trying to talk to the owner of the disabled car. Plaintiff Albrecht also testified to his own methods of parking his tow car at the side of the road near the scene of the accident or, on rare occasions, in the middle of the road to ward off oncoming traffic, and also as to other precautions which he took so as not to impede traffic or law enforcement.
The plaintiffs, as previously stated, agree that there is a necessity for regulation of the tow car industry. They contend, however, that section 12.0 is prohibitory, not regulatory, and therefore unconstitutional. The leading cases cited by the plaintiffs to sustain their position are People v. Grant (306 N. Y. 258, 260) and Good Humor Corp. v. City of New York (290 N. Y. 312). Both cases say that a regulatory ordinance would be valid. In the Grant case the court held invalid a town ordinance that completely prohibited the use of certain public streets by the public; and in the Good Humor case the court held invalid an ordinance that prohibited vending in the *1058 city streets, where no public necessity was shown for the prohibition. However, even in the Good Humor case (p. 319) the court said that the city could prohibit if it were shown that the Good Humor activity interfered with traffic.
Section 12.0 does not prohibit as did the ordinances in the Grant and Good Humor cases. Whereas the use of public streets was prohibited in those invalid ordinances, under section 12.0 tow cars may still travel the public streets for towing purposes. In fact, they are authorized to tow when “ requested or notified to do so by the owner or his authorized representative or the police ’ ’; and under section 12.1 tow car owners and operators are required to service a disabled car when requested by the owner of the disabled car who is able and willing to pay the required towing fee. What is prohibited is ‘ ‘ solicitation of towing work ’ ’ by the operator or occupant of a tow car while on the public street at the scene of an automobile accident, and going to the scene of an accident for the purpose of solicitation at the scene of the automobile accident. Other solicitations by tow car operators are not prohibited.
It is conceded that a past abuse was too many tow cars at the scene of an accident, that the number of tow cars that converge upon the scene of an accident on an average occasion is about five or six, that each tow car has from one to three occupants, and that it is possible for 15 men to be at the scene of an accident, all trying to solicit the towing job from the owner of the disabled car. The impact of all this upon the operator of a motor vehicle involved in an accident, that is, upon a person who is already shocked and emotionally strained and sometimes dazed, confused and unable to think clearly, is enough reason to warrant legislation such as this. Such motor vehicle operators are entitled to protection against this type of overbearing and “ avalanche ” salesmanship. Then, too, with a number of tow car operators converging upon the scene with one objective in mind- — to get that tow job and the possible repair job too- — speed laws which interfere with getting there first will probably be violated with resultant interference with other car operators and traffic in general. Certainly if we are to balance the interests of tow car operators as against the members of the public who are unfortunate enough to become involved in accidents and the rest of the people who travel on the public streets, it is clear that the interests of the public should prevail.
It was further stipulated that ‘ ‘ the policeman at the scene is always ready to act quickly and clearly, being trained so to do.’’’ Can he do that if, while he is trying to investigate the facts *1059 of the accident and to help those persons who may be injured, the tow car operators are milling around the damaged car owner for the purpose of persuading him to give his towing job to one of them to the exclusion of the other solicitors?
The objection that “ a tow car within an incorporated village may proceed to the scene of an accident within such incorporated village and solicit the towing job at the scene, while the tow car in an unincorporated area of the same town may not proceed to the same scene within the town” really answers itself. It is a matter of judicial notice that the Town of Hempstead has the right to legislate for the town areas, and that the Cities of Long Beach and G-len Cove and the incorporated villages within the County of Nassau have a certain amount of autonomous standing separate and apart from the towns that surround them. (See Village Law, arts. 1-A, 4, for example.)
The mere fact that tow car operators may from time to time have been of assistance to injured persons by their ability at times to get to the scene of an accident first may warrant them some praise, but that does not permit the conclusion that the ordinance is therefore invalid. Such acts are gratuitous and not obligatory. The primary responsibility in such matters rests on the county, the town and the police.
In short, section 12.0 does not prohibit the use of public streets to tow cars nor does it prohibit all solicitation of towing work. What it does prohibit is unregulated solicitation that interferes with the free choice by the damaged car owner who is in a poor position or condition at that moment to properly protect himself, the racing to the scene of an accident by tow car operators to first solicit and garner the towing contract with the resultant interference with the rights of other motorists and traffic in general, and the interference with the proper police investigation and other necessary police work at the scene of the accident. ■
So long as there are motor vehicle accidents the number of towing jobs available will keep pace with the number of these accidents. The towing business will not be diminished or interfered with by this ordinance. What is diminished or interfered with by this ordinance is dangerous ‘ ‘ chasing ’ ’ to the scene of an accident, unwarranted “ avalanche ” solicitation of emotionally upset, confused or dazed operators involved in accidents, and interference with proper investigation and other work by the police at the scene of the accident.
Furthermore, the fact that a better ordinance may have been drafted is also not a sufficient objection. Constitutionality *1060 does not require perfection. (Wiggins v. Town of Somers, 4 N Y 2d 215, 221, supra.)
Similar ordinances have been upheld in Tennessee and Texas. (City of Chattanooga v. Fanburg, 196 Tenn. 226; Liegl v. City of San Antonio, 207 S. W. 441 [Tex.]; City of Dallas v. Harris, 157 S. W. 2d 710 [Tex.].)
Reasonable grounds have been shown for section 12.0 in the legislative findings, in the stipulation of facts and by other evidence adduced at the trial. This section is valid and constitutional.
The plaintiffs have also attacked many other sections of Ordinance 40 as void and unconstitutional.
II. The attack on sections 3.5, 3.6, 3.8(e) and 3.9(e) must fail, because the plaintiffs are licensed tow car operators in the Town of Hempstead and are not in any way aggrieved by those provisions. A person cannot complain of an ordinance unless he is the victim of that ordinance; and a mere apprehension of what might be done to him under it if it applied to him does not authorize that person to attack the ordinance. (Headley v. City of Rochester, 272 N. Y. 197, 203, 204.) Then, too, if the plaintiffs should be denied licenses under these sections they would be required to exhaust their administrative remedies under section 5.0 of the ordinance before attacking the ordinance itself. If administrative relief was then improperly denied their remedy would be a review of that determination under article 78 of the Civil Practice Act. Be that as it may, these sections do not limit the number of licensed tow cars since any refusal of a license by the Town Clerk is reviewable by the Town Board and by the court, and these sections do not limit the tow car operator to any area.
III. The attack upon section 3.13, the one that pertains to the nontransferability of a tow ear owner’s license, on the ground of unconstitutionality, must also fail. Since the town has the right to license, it has the right to know and to determine who the licensee shall be. A license is not a commodity that can be bought and sold. Furthermore, licensing provisions are in part intended to identify accurately the agency responsible for the control and the operation of each tow car. (Matter of Pruzan v. Valentine, 282 N. Y. 498.) Anyway, section 137 of the Town Law says that such a license “ shall not be transferable.”
IY. The next attack is upon section 3.2(b) which requires a disclosure of convictions in an application for a tow car owner’s license. The plaintiffs contend that this provision is unconstitutional on the ground of inadequate standards. As previously *1061 stated, the plaintiffs as licensees are not aggrieved persons qualified to attack this provision. Then, too, section 137 of the Town Law states that ‘A license may be refused if the applicant shall have been convicted of a misdemeanor or a felony, which in the judgment of the town clerk * * * renders the applicant unfit or undesirable to carry on the trade or occupation involved. ’ ’
V. The plaintiffs also attack sections 4.2 (f) (h) and 4.4. These sections require disclosures of arrests and convictions upon application and the reference of these matters to the police for investigation. This attack fails too. Section 137 of the Town Law gives the Town Clerk the right to refuse a license to a person convicted of a misdemeanor or a felony, but also ‘ ‘ to any person who in his judgment shall be an undesirable person * * *. Any applicant who has been refused a license by the town clerk * * * may apply to the town board”. A public hearing is then had. The Town Board’s decision is then reviewable under article 78 of the Civil Practice Act. It is clear, therefore, that the Town Clerk and, if necessary, the Town Board need this information in determining whether the applicant is a desirable or an undesirable person as a tow car operator. Then, too, such knowledge as to the background of such operators is needed for the protection of that part of the public unfortunate enough to be involved in a motor vehicle accident.
VI. The attack upon sections 9.0 and 9.1, too, must fail. The suspension and revocation provisions of those sections provide reasonable grounds for such action and any preliminary action is reviewable by the Town Board. Finally, action by the Town Board may be taken only after a hearing on not less than 20 days’ written notice to the licensee. That procedure guarantees to the applicant a sufficient and reasonable time to be informed of the reasons against his application and to prepare for such hearing. This procedure clearly conforms with the due process clause of the New York and Federal Constitutions.
VII. Section 10.5(g) which requires the surrender of a tow car license within 24 hours of the disposition of the tow car is also valid and constitutional. Here, again, the power to control and regulate through the process of licensing carries with it the means of identifying accurately the agency which controls and operates each tow car. (Matter of Pruzan v. Valentine, 282 N. Y. 498, 506, supra.)
VIII. Section 11.1(c) is also valid. It prohibits the removal of a vehicle damaged in an accident and in which a person has *1062 been injured until released by a duly authorized member of the Nassau County Police Department. A mere reading of this section answers the objection. Surely it cannot be seriously contended that a provision obviously intended to guarantee the proper police investigation and protection after an accident in which a person has been injured or killed is unconstitutional. The argument advanced in this area is another that seems to assume a superior duty and responsibility on the part of the tow car operators toward damaged car owners and injured occupants over the duty and responsibility of the police.
IX. Section 11.2 which requires the report to the Town Clerk of summonses and arrests and the particulars thereof is also valid. Again, the Town Clerk and the Town Board are entitled to this information in determining suspensions and revocations. They are entitled to this not only under Ordinance 40, but also under section 137 of the Town Law. Public protection requires such information in determining responsibility or irresponsibility of tow car operators. And, again, the plaintiffs are not aggrieved parties.
X. Section 12.5(b) which makes it unlawful for anyone to enter into an agreement for the repair or estimate of repairs when the owner is to be hospitalized until 24 hours after the accident, unless the injured person has been discharged from the hospital in the meantime, is also valid. Clearly, this section was enacted so that an injured person may receive preliminary hospital treatment and be started on his recovery without being harrassed, exploited, victimized or molested, especially at a time when he is not in sufficient command of his neurological and mental faculties to enter freely and knowingly into a contract. Anyway, how are repairmen improperly affected if they must wait a mere 24 hours before soliciting a repair job contract? This provision is nowhere near as strict as section 270-b of the Penal Law which prohibits the entrance of a person into a hospital to negotiate a settlement or to obtain a release or statement within 15 days after the injuries were sustained.
XI. 'Sections 11.1(b) and 12.6 which prohibit the removal of vehicles disabled in an accident without written authorization by the owner or party in charge on a prescribed form is also valid. Licensed tow car operators can always have these forms available on their cars and on their persons.
They do not violate the equal protection clauses of the Constitutions because they apply equally to all persons in the same class — tow car operators, and so forth.
*1063 Here, again, the argument crops up that tow men perform a volunteer public service and that any interference with such volunteer gratuitous service is unconstitutional.
The argument that they would violate these sections if ordered by the police to remove a damaged vehicle is weak. The same argument could be made in a case where a private car operator is commandeered by a policeman to give chase to a suspect and in doing so exceeds the speed limits. A defense that the action was on police orders is certainly valid.
CONCLUSION
Therefore, in applying the principles of Wiggins v. Town of Somers (4 N Y 2d 215, 218, 219, supra) to this record, it is clear that the plaintiffs have failed to sustain their burden of proof, and the Town of Hempstead Ordinance No. 40 must be sustained as reasonable and constitutional.
The complaint is dismissed.
This is the decision of this court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.