**Frank R. VANDERHOOF, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 5216.**

District of Columbia Court of Appeals.

Argued July 21, 1970.

Decided Sept. 25, 1970.

10. We find petitioner's First Amendment argument without merit.

Joel I. Hoffman, with whom Solomon L. Margolis, Washington, D. C., was on the brief, for appellant.

Thomas R. Nedrich, Asst. Corp. Counsel, with whom Hubert B. Pair, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before FICKLING, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was charged with violating the District of Columbia Regulations Governing the Business of Furnishing Towing Service for Motor Vehicles [1] when he responded in his tow truck to the scene of an accident to solicit towing service, without first having been called there by the operator of the disabled vehicle, or by a member of the Metropolitan Police Department. These regulations result in a comprehensive plan for the licensing and regulation of towing services in the District. The pertinent regulation states:

> (h) It shall be unlawful for any tow truck worker to stop at the scene of an accident, to solicit directly or indirectly towing service at such scene, or to furnish any towing service, unless he has been called by telephone to such scene by the owner or operator of a disabled vehicle or by a member of the Metropolitan Police Department pursuant to Department procedures. Nothing herein contained shall prohibit the rendition of towing service to a disabled vehicle if such service has, since such vehicle was disabled, been requested in person at the place of business of the licensed operator by the owner or operator of the disabled vehicle.[2]

In pre-trial proceedings appellant moved to dismiss the charge on constitutional grounds and lack of authority to regulate the industry. After hearing testimony, the motion was denied by the pre-trial judge

---

1. Comm'rs Order No. 65–121A (April 1, 1965), as amended, Comm'rs Order No. 65–1002a (July 20, 1965).

2. *Id.* § 12(h).

and the case came to trial. Appellant stipulated that he had in fact violated the section,[3] but based his plea of not guilty on the previous testimony and the grounds stated in his motion to dismiss, which he renewed at that time. The trial court found him guilty and imposed punishment of a $100.00 fine or 30 days in jail, the balance of the fine to be suspended if appellant paid $25.00.[4]

Appellant urges two grounds of constitutional attack against this regulation. The first is, essentially, that it is violative of due process in that it is arbitrary and capricious, and acts as an unreasonable restraint of trade "in the same manner as if the regulation had prohibited the towing of vehicles entirely." He alleges great economic loss to himself and the entire city towing industry as the result of its enforcement. The second is that the regulation does not afford all members of the towing industry equal protection of the law in that the lists of tow truck operators which a police officer investigating an accident may furnish are arranged alphabetically resulting in prejudice to those on the bottom half of the list. We disagree with both contentions.

■ We turn first to appellant's retraint of trade-due process[5] attack. Appellant does not dispute, and correctly so, the right of the District of Columbia to regulate businesses such as his in the interest of public safety under its police power. See D.C.Code 1967, §§ 1–226, 47–2345(a). There is a strong presumption of constitutionality afforded to such regulations, Jones v. District of Columbia, 116 U.S.App.D.C. 301, 305, 323 F.2d 306, 310 (1963), and one attacking them on due process grounds carries the heavy burden of showing that the regulation is unreasonable and has no rational relationship to the objective sought to be obtained. Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Jones v. District of Columbia, supra. Appellant has not overcome this presumption nor met this burden.

There were numerous abuses in the towing industry which these regulations sought to correct. For example, many of the operators had police radios in their trucks. On the basis of information secured over the police radio frequency one or a number of these tow trucks would arrive on the scene of an accident. This caused traffic congestion and on a number of occasions the drivers of such trucks, in an effort to secure a tow, engaged in disorderly conduct, resulting in their being arrested on that charge. The regulations sought to prevent this. In addition, it was intended that the regulations would prevent congregating at the scene of accidents, so that police could complete their investigations before the tow trucks were called to the scene. Furthermore, one of the primary evils of the industry was speeding and reckless driving to the scene of accidents in the quest for business and these regulations sought to deal with that threat to the public safety.[6]

■ In light of this, we conclude that this regulation is a proper exercise of the

---

3. It was his stated intention to "test" the regulation.

4. This was the amount of collateral originally set for the violation, which appellant had paid.

5. We view appellant's restraint of trade contention as being enveloped necessarily in his due process argument.

6. See, e. g., Letter from the President of the Board of Commissioners to the Honorable John L. McMillan, Chairman, House Committee of the District of Columbia, June 7, 1956 (D.C. Gov't Executive Office file No. GF 7–181 A); Public Hearings in the matter of Proposed Amendment to Regulations Governing the Business of Furnishing Towing Service for Motor Vehicles, Statement of Thomas F. Moyer, Asst. Corporation Counsel, D.C. at 24 (1965); Memorandum to the Board of Commissioners, Report and Recommendations on Public Hearings Concerning Proposed Amendments to the Regulations Governing the Business of Furnishing Towing Service for Motor Vehicles, Findings at 2 (1965).

city's police power since it bears a reasonable relationship to the purposes of its enactment and does not unconstitutionally restrain trade or deprive appellant of his property without due process of law. By prohibiting tow truck operators from cruising the streets searching for business the purposes outlined above are achieved.[7] It can hardly deprive the industry of its business. As the court noted in Hempstead T-W Corp. v. Town of Hempstead, 13 Misc.2d 1054, 177 N.Y.S.2d 445, 451, aff'd, 7 A.D.2d 637, 179 N.Y.S.2d 848 (1958):

> So long as there are motor vehicle accidents the number of towing jobs available will keep pace with the number of these accidents. The towing business will not be diminished or interfered with by this ordinance. What is diminished or interfered with by this ordinance is dangerous "chasing" to the scene of an accident, unwarranted "avalanche" solicitation of emotionally upset, confused or dazed operators involved in accidents, and interference with proper investigation and other work by the police at the scene of the accident.

█ Constitutionality does not depend upon whether the legislature might have achieved its objective in a more acceptable way. Courts will not inquire into the wisdom of such enactments when the measures used are not arbitrary or discriminatory. *Nebbia, supra,* 291 U.S. at 537, 54 S.Ct. 505. Appellant has made no persuasive showing of arbitrariness or discrimination either at trial or on appeal.

It may well be that the use of appellant's tow trucks, and those of others, has been restricted. In fact, this was the intent of the regulations. But the restraint on trade which consequently flows from them cannot be said to be illegal since, as we have said, the regulation is fair and reasonable in light of its purposes. In so concluding we have also disposed of appellant's contention that there has been a taking of his property without due process of law. We need only add to that what the Court said in Goldblatt v. Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962):

> If this [regulation] is otherwise a valid exercise of the [city's] police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.

█ We turn now to appellant's second contention which is that the regulation by virtue of its application does not afford all members of the towing industry equal protection of the law.[8]

Section 12(e) of the regulations allows officers of the Metropolitan Police Department to furnish information regarding towing services to victims of accidents. The information is currently furnished on alphabetical lists of those providing such services, divided according to their location in the six police districts in the city. Appellant contends that he and others whose names begin with letters near the end of the alphabet are thereby treated unfairly, as persons seeking towing service will normally choose the first available service listed. No evidence was offered at trial to support this latter contention and, therefore, we think it is based upon no more than speculation. Someone's name must be first and alphabetical listing is a

---

7. Similar regulations exist in other states and have been approved by the courts. *See* cases collected at Annot., 42 A.L.R.2d 1208 (1955).

8. While the Constitution's equal protection clause is in the fourteenth amendment and therefore literally does not apply to the District of Columbia, "the concepts of equal protection and due process [under the fifth amendment] * * * are not mutually exclusive." It is assumed that an unjustifiable discrimination may also be "violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

common method of attempting to avoid favoritism.[9]

Furthermore, certain information contained in the lists themselves would tend to refute appellant's contention. There is not one alphabetical list for the entire city, but rather an alphabetical list for each of the six police districts in the city. The hours and days available, which vary, are given after each name on the list. The far right column shows whether an individual towing service will accept calls to accidents, and these also vary. The location of the service is also given. All of this tends to counter appellants unsupported assertion that those perusing the list "will normally take the first available service." What it also does is to raise factual questions as to what accident victims actually do when presented with such a list and, as noted, no evidence, statistical or otherwise, was offered by appellant to prove his contention that "the A's will normally be called first." It is just as plausible to assume, for example, that a motorist will choose a given operator's service based on his proximity to the scene of an accident.

■ The mere possibility of discrimination is not enough. It is essential that the deprivation of equal protection be "found in the actual existence of an invidious discrimination.  *  *  * " [10]  That has not been shown here.[11]

In view of the foregoing, the judgment of the trial court is

Affirmed.

9. Compare, for example, the classified advertisements in a telephone book, or the listing of names on electoral ballots.

10. Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 84–85, 66 S.Ct. 850, 852, 90 L.Ed. 1096 (1946).

11. Appellant does not contend that the regulation is being enforced in such a way as deliberately to discriminate against him. Section 12(e) of the Regulations prohibits such activity.