Gordon M. Lipetz, J.
In this action for an injunction to permanently enjoin the defendants from enforcing Local Law No. 3-74 of the Town of Huntington entitled “ Tow Truck Law ”, plaintiffs move for summary judgment claiming that said local law is arbitrary, capricious and unreasonable, and therefore unconstitutional and void. The plaintiffs are engaged in the tow truck ¡business, excepting that Bi-County Towmen’s Association, Inc. is a not-for-profit corporation whose members are tow truck operators in Nassau and Suffolk Counties. Their complaint alleges that the licensing provisions of the local law are vague and uncertain and create a monopoly to one class over another with no relation to the public purpose of the enactment; that enforcement has been unlawfully delegated to the Suffolk County Police Department; and that the entire statute is unreasonable, arbitrary and capricious and unlawfully restrains their right to engage in business. The defendants Town of Huntington and ¡Suffolk County Police Department have interposed :a general denial.
The Tow Truck Law of the Town of Huntington is designed to protect .the motoring public from past abuses and methods of operation that have left motorists at the mercy of certain unscrupulous tow truck operators and auto-body repair establishments. Its purpose, as stated in section 54 — 2 thereof, is “ to standardize the operations of the tow truck industry to the extent that it creates a more equitable and uniform system of handling all types of1 towing calls (and) affording the owners and/or operators of motor vehicles requiring such service, the benefits of the effects of such standardization, by licensing”. *836 Three cl-assés of licenses are provided for: 'Class A is for a police-inspected vehicle owned by a service station or repair shop. Class B is for a police-inspected vehicle owned and operated by anyone other than a service station or repair shop. Class A and B licensed vehicles may respond to calls from motorists. Class C is for a Class A licensed vehicle which is placed on an approved list and shall be called by the police to accidents on a rotating basis. The. license fee for Class A and B vehicles is $10 per annum, and the fee for a Class C vehicle for the first year is $100 and $50 per annum thereafter.
The law is extremely comprehensive. Among other things, it provides for the licensing of all tow vehicles operating in the Town of Huntington and for inspection, regulation and identification of licensed vehicles. It requires that a written consent or authorization from the motorist be obtained by the tow truck operator before a motor vehicle may be removed from the scene of an accident or disablement, and such consent must disclose the rates to be charged for towing and storage, which are the only services the tower may perform. The law mandates a 24-hour waiting period before repairs to a vehicle may be started and then only if the owner of the vehicle authorizes the repairs in writing. Solicitation of towing work by driving on public highways (outside of an incorporated village) and at the scene of any accident, whether on private property or on a public highway, is prohibited.
The law provides for an approved list of tow-truck operators which the Suffolk County Police Department must call to remove disabled motor vehicles and prescribes requirements which must be met before a itow (truck operator can qualify for inclusion on the list. Maximum towing and storage rates are established for those on the approved list. A tower on the approved list may impose a charge of 10% of the labor charge applicable to the repairs for estimating the cost of repairs to a motor vehicle, providing the owner’s written consent is first obtained for such estimate. In order that all towers on the approved list receive an equitable share of the tow business, the Suffolk County Police Department is required to rotate those on. the approved list from one disablement to another. The Police Department must furnish to a committee of three, appointed by the Town Board, a weekly report of all calls and assignments made to tow truck operators on the approved list. The law also provides for the imposition of fines against persons or firms for violation or refusal to comply with any of the pro *837 visions thereof, in addition to revocation of the license by the Town Board under stated conditions.
Undoubtedly, the Town of Huntington has a right to regulate and license the towing business. (Hempstead T-W Corp. v. Town of Hempstead, 13 Misc 2d 1054, affd. 7 A D 2d 637; Municipal Home Rule Law, § 10, subd. 1, par. a, cl. [11]; Town Law, § 136.) The Tow Truck Law, being a legislative enactment, is presumed to be constitutional. (Wasmuth v. Allen, 14 N Y 2d 391.) While the presumption is rebuttable, uneonstitutionality must be established beyond a reasonable doubt. (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537; Wiggins v. Town of Somers, 4 N Y 2d 215; Vintage Soc. Wholesalers Corp. v. State Liq. Auth., 63 Misc 2d 287.)
Plaintiffs have attacked the law in toto, and various sections have been challenged specifically. These will now be considered.
Section 5A-4(A) of the law prohibits the operation of a u motor vehicle designed and capable to tow other motor vehicles for hire within that portion of the Town of Huntington outside any incorporated village * * * unless a license therefor shall have first been obtained * * .* except that tow truck operators from outside the Town of Huntington may enter the Town to remove a motor vehicle from owner’s property or auto body establishment as hereinafter defined without a license ”.
The section is .so all-encompassing that it would place an unlicensed tow truck from, outside of the town in violation of the law if it were merely passing through the Town of Huntington with or without a motor vehicle in tow and whether on business or not. A ¡noniicensed tow truck from outside the town may tow a disabled vehicle only from an owner’s property or from an auto body establishment. Thus, if a nonresident’s motor vehicle became disabled through nonaccident he could not hire the services of an unlicensed tower operating from outside of the town to tow the car out of the Town of Huntington unless it had been first towed by a licensed tower to a body shop in the town. ¡Such result is unreasonable and arbitrary and improperly discriminates against towers outside of the town (General Municipal Law, § 80).
The defendant town relies heavily on Hempstead T-W Corp. v. Town of Hempstead (13 Misc 2d 1054, affd. 7 A D 2d 637, supra). Hempstead’s tow law, however, did not attempt to regulate and license all tow vehicles seeking to use a highway in that town as does the law in question. The law attacked here is not limited to the licensing of those engaged in the tow *838 truck business in the Town of Huntington. A motor vehicle equipped to tow vehicles for hire, having been duly licensed by the Motor Vehicle Department of the State of New York, is entitled to operate over the public highways in the State “ subject exclusively to regulation and control by the State as sovereign, except to the extent that the Legislature delegates power over them to political subdivisions and municipal corporations ”. (People v. Grant, 306 N. Y. 258, 260.) Had the State intended to grant the power to a town to regulate all tow trucks as they use a public highway, it would have expressly provided therefor in section 1660 of the Vehicle and Traffic Law as it has done for cities having populations in excess of one million (Vehicle and Traffic Law, § 1642, subd. [a], par. 15) and as it has done in the case of highways under the jurisdiction of certain public authorities or commissions (Vehicle and Traffic Law, § 1630,-subd. 19).
In addition to the lack of express power in the town to regulate all tow trucks as they use the public highways, the same section requires that a license be obtained from the Town Clerk before a truck designed to tow motor vehicles for hire may be operated in the Town of Huntington. Such prohibition contravenes the express provisions of section 1604 of the Vehicle and Traffic Law which prohibits local authorities from passing, enforcing or maintaining any ordinance or regulation which requires any owner of a motor vehicle to pay a fee or obtain a license for the use of a public highway. A town board may not regulate traffic. (Wiggins v. Town of Somers, 4 N Y 2d 215, supra.) Accordingly, the Town of Huntington has exceeded its statutory authority in enacting section 5A-4(A) of the Tow Truck Law and same is therefore unconstitutional and void.
Plaintiffs attack the licensing provisions of section 54 — 4(B). Subparagraph 2 thereof requires applicants for a license to sign a statement to the effect that they have read and understood the provisions of the law land will abide by them. The court finds this to be a reasonable requirement. Such requirement does not operate as a waiver of an operator’s right to attack the method of application of the law or resist the imposition pi a fine or revocation of a license.
Subparagraph 6 thereof is attacked on the ground that there is no provision for a review of the towing rates to be charged and that the licensee should not be bound for all time to the rates submitted. The law does not require that he be so bound. Licenses issued under the law expire on February 15 of each year and it seems: obvious to the court that if the licensee wishes *839 to change his towing rates upon application for renewal he may do so. One year within which a licensee may be required to be bound ¡by the rates submitted is not such a long time as to be deemed unreasonable.
•Subparagraph 8 is attacked on the ground that the delegation to the Town Clerk of authority to require the disclosure of “ any other relevant information” is too broad, since no guide or standard has been provided and the penalties provided in section 54-17 are penal in nature. The court is of the opinion that the discretion .granted to the Town Clerk is unnecessarily broad. No reason can be perceived why the first 7 sub-paragraphs of section 5A-4(B) do not encompass all the information that the Town Clerk reasonably requires for the issuance or denial of a license. If the town board believes that additional information is needed the details thereof should be specifically set forth. As subparagraph 8 reads, there is nothing to prevent the Town Clerk from requiring additional information from one applicant and not from another. Thus, the requirement is unreasonable, arbitrary and void.
Section 54-7 is objected to by the plaintiffs because it provides that the license ‘ ‘ shall not be transferable from one operator to another ”. In Hempstead T-W Corp. v. Town of Hempstead (13 Misc 2d 1054, 1060, supra), Justice Pittoni stated: “ Since the town has the right to license, it has the right to know and to determine who the licensee shall be. A license is not a commodity that can be bought and sold. Furthermore, licensing provisions are in part intended to identify accurately the agency responsible for the control and the operation of each tow car [citing cases].” I am in accord with that position. Additionally, section 137 of the Town Law specifically provides that a license “ shall not be transferable ”. Section 54-7 is therefore valid.
Plaintiffs’ attack on section 54-8(A) is likewise ill founded. The scene of an accident must be controlled. Vehicles should not be towed from the scene without proper authorization, and if authorized there is no apparent reason why the service charges of the tower should not be limited to that for towing and storage. Subparagraph B of the same section is obviously designed to prevent the commencement of immediate repairs to a disabled vehicle in order to give the disadvantaged motorist an opportunity to reconsider an authorization granted under stress at the scene of an accident. Twenty-four hours for such reconsideration is not overly long and certainly is entirely reasonable.
*840 Plaintiffs also attack section 54 — 9. Subparagraph A of this section forbids any person, firm or corporation to drive on any street or highway within the Town of Huntington (outside of village limits) for the purpose of soliciting tow work. This section pertains not only to a licensed tow truck operator, but includes anyone engaged by a tow truck operator for such purpose. It is in effect an attempt to prohibit the use of the highways by one engaged in a lawful pursuit. The town is without authority to so legislate. (Wiggins v. Town of Somers, 4 N Y 2d 215, supra.) Subparagraph A is therefore void. Sub-paragraphs B and C are objected to on the grounds that they are vague and the meaning is uncertain. Subparagraph B merely prohibits the solicitation of towing work at the scene of an accident. Subparagraph 0 prohibiting the monitoring of police radios by tow truck operators other than those on the approved list must be considered together with subparagraph' B as said paragraphs taken together are designed with but one purpose in mind. They prevent tow truck salesmen from converging on the scene of an accident to obtain towing work. Racing to the scene of an accident by tow trucks and their representatives for the purpose of soliciting towing and repair jobs was one of the abuses which brought about the enactment of the law. The court finds that subparagraphs B and C are reasonable and valid. (See Hempstead T-W Corp. v. Town of Hempstead, 13 Misc 2d 1054, supra.)
The attack on section 54-10 is ill founded. That section provides for revocation of a license granted to any licensee whom the town board after a hearing determines to be guilty of certain specified misconduct. A town board is expressly granted the power to revoke any license issued by it, after a public hearing and opportunity to be heard, to any applicant whom the town board shall determine to be an undesirable person or incapable of properly conducting the trade or business previously licensed. (Town Law, § 137.) Objection is made that revocation is too harsh and there should be lesser penalties available. The fact that suspension of a license has not been specifically provided for does not render the section so unreasonable as to be unconstitutional. The power to revoke necessarily includes the lesser power to suspend, and revocation of a license may only be ordered after a hearing. The section complies in all respects with section 137 of the Town Law and is valid.
Plaintiffs’ principal attack, however, is directed against certain requirements contained in section 54-11 of the law in order *841 to qualify for a Class C license and for placement on the approved list. The 'additional fee of $100 is objected to as a penalty or tax. The court is unable to determine whether the fee is excessive or is reasonably necessary to maintain and supervise the approved list. A committee of three individuals is to be appointed by the town board Which shall review the weekly reports submitted to them by the Suffolk County Police Department. (§ 54-15[A].) Presumably, such review is designed to assure that each tow truck operator on the approved list receives his fair share of the business assigned by the police, as well as to review the performance of such tow truck operators. Such service is not without cost. The validity of the additional fee turns on whether it is required for proper regulation and supervision of the approved list or whether it is a tax for raising revenue. (City of Buffalo v. Lewis, 192 N. Y. 193; Town of North Hempstead v. Colonial Sand and Gravel Co., 14 Misc 2d 727.) No facts have been presented to require a determination that the fee is a penalty or tax.
Section 54-11, subdivisions A 1 and 2 (a), (b), (c) and (d) are attacked on the ground that the tow truck operator who owns, leases or operates a body shop is favored under the law. The tow truck operator seeking to qualify for the approved list who does not own, lease or operate an automobile body establishment must execute an affidavit to the effect that he (1) is the owner of a licensed tow truck and in the towing business; (2) has a written agreement with an owner of such establishment in the town which authorizes him to tow vehicles to such establishment for at least one year and must disclose the amount to be paid to the tower for such service; and the agreement must be filed with the Town Clerk if the body establishment is not licensed; (3) has been engaged in the towing business prior to December 1, 1972; and (4) is affiliated with only one body establishment, which is not on the approved list of tow truck operators.
The town claims that the requirement of a written agreement with an automobile body establishment located in the town is tb prevent the tower from shopping around to obtain the largest sum for delivering the car to the auto repair shop and to insure that the public will know where the disabled car can be located. If a tow truck is owned or leased by a body establishment it is reasonable to assume that the disabled vehicle will be towed to such establishment. On the other hand, a licensed tow truck operator who does not own or operate 'a body shop is at the mercy of the body shop that is not on the approved list. The *842 owner of such body >shop may dictate such terms as would make it impossible for the independent tow trucker to compete with others in his class, and thus prevent him from being licensed for the approved list for want of a written agreement. In effect, body shop owners would control the licensed tow truckers who do not own or operate body shops. In this respect the law is discriminatory and unreasonable. Accordingly, section 54 (A) (2) (b) is invalid and void.
The requirement of subdivision 2 (c) that such a tow truck operator, as a condition precedent to qualifying for the approved list, must have been in the towing business prior to December 1, 1972, more than a year before the local law was enacted, bears no relation to the purposes which the town ascribes to the law. It can only result in the death knell of those in plaintiffs’ class, which is certainly not a disclosed purpose of the law as contained in section 54-2. That elimination of those in plaintiffs’ class may have been a motivating factor in the enactment of the law becomes apparent when considered with section 54-7, which provides in part that such licenses “ shall not be. transferred from one operator to another ’ ’. Standardization of the towing industry should not be brought about by eliminating those in a lawful industry who do not own a body establishment and who provide a needed service to the community. “ When regulation becomes destruction, it ceases to be regulation.” (Eighth Ave. Coach Corp. v. City of N. Y., 286 N. Y. 84, 94; Matter of Bon-Air Estates v. Building Inspector, 31 A D 2d 502; People v. Cassese, 43 Misc 2d 869.) Accordingly, section 54-11 A (2) (c) is held illegal and void.
Subdivision (d) of section 54r-ll (A) (2) requires an operator in plaintiffs’ class to swear “ that he is affiliated with only one body establishment and that said establishment is not itself on the approved list of tow truck operators ’ ’. The reason for this requirement is obscure, particularly when considered with subdivision (b) of the same section, discussed above, nor have defendants offered any explanation. Under subdivision (b) a tower in plaintiffs’ class must become affiliated by written agreement with an automobile body establishment within the town. Such establishment may be licensed or unlicensed. The town, in requiring the operator to sign an affidavit that he is affiliated with only one body establishment and that said establishment is not on the approved list of tow truck operators, has thereby thrown those in plaintiffs’ class at the feet of the automobile body establishments which operate licensed tow trucks since such an operator can qualify for the approved list at any time *843 and thereby bring about the demise of tow truck operators in plaintiffs’ class. This requirement I find to be unreasonable, unnecessarily burdensome, and arbitrary and serves no valid purpose under the Tow Truck Law. Section 54-11 A (2) (d) is therefore invalid and void.
Section 54-11 subparagraph C requires a tow truck to be equipped with certain minimum equipment in order to qualify for the approved list. The State has not enacted legislation specifically prescribing equipment for tow trucks, although it has prescribed certain equipment for motor vehicles generally. (Vehicle and Traffic Law, § 375 et seq.) Equipment such as dual rear wheels, fire extinguisher, crow bar, shovel, emergency flashing light, first aid kit, red flares and the like all are reasonable for the emergency service to be rendered by a tow truck operator at the scene of an accident or disablement. A local law in conflict with State law is prohibited, unless expressly authorized by the State. (Vehicle and Traffic Law, § 1600.) This subparagraph, however, is not in conflict with State law as it does not permit anything prohibited, nor does it prohibit anything permitted. (Main Private Car Serv. v. Mayor of City of Yonkers, 71 Misc 2d 417.)
The requirement contained in subparagraph D of the same section as to minimum insurance coverage of $100,000 to $300,000 for bodily injury liability and $15,000 property damage as well as garage liability insurance is attacked on the ground that the State has pre-empted the field and a provision which is in conflict with State law is void. It is true that the State has enacted legislation in this area. (Vehicle and Traffic Law, § 311 et seq.) While it may be said that the State has pre-empted the automobile liability insurance field it has done so only with regard to minimum coverage and certain mandatory policy provisions. Insurers are specifically granted authority to offer “ coverage under an owner’s policy of liability insurance more liberal than that required by said minimum provisions ”. (Vehicle and Traffic Law, § 311, subd. 4, par. [a].) Moreover, the Town Law does not require all tow vehicles to carry this 'additional insurance coverage. The requirement is applicable only to those tow truck operators who qualify to respond to police emergency calls from the approved1 list. Such duty is extra-hazardous and the requirement of additional insurance coverage and garage liability insurance is reasonable for the protection of the public, the Suffolk County Police Department and the town as the case may be. Local laws are prohibited only where it is clear that the State law indicates a purpose to occupy the entire field. *844 (People v. Lewis, 295 N. Y. 42, 51; Foley v. McKnealley, 67 Misc 2d 889.)
The plaintiffs also attack section 54-11, subparagraph E, which permits a tow truck on the approved list to tow a vehicle disabled for reasons other than as a result of collision or when body work on the vehicle is not required to any “ appropriate lawful establishment ” where it can be serviced or repaired. Plaintiffs claim that since an appropriate lawful establishment is not defined, the section is unenforceable because its meaning is vague and uncertain. The defendant town claims that a lawful establishment is one lawfully operating under the zoning ordinance of the town. That contention will hardly suffice. While constitutionality does not require perfection, a law may not be arbitrary and must be reasonably related to some manifest evil. (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, supra; Wiggins v. Somers, 4 N Y 2d 215, supra.) Subparagraph E does not appear to be reasonably related to any manifest evil and is arbitrary in that it is designed to favor tow trucks on the approved list. It is therefore invalid and void'.
Plaintiffs also attack sections 54-12, 13 and 14 which establish maximum rates or charges for towing, written estimates and storage charges applicable only to those tow truck operators on the approved list. Tow truck operators on the approved list are to respond only to calls from the police in emergencies. Tow truck operators are not regulated as to rates in nonemergency situations, as licensees are permitted to determine and fix their own rates in such situations. It is unfair to the public, however, to permit towers to impose various rates where motorists by and large have little or no freedom of choice and where the most important and overriding concern to the police and to the motoring public is the prompt removal and storage of the disabled vehicles at reasonable rates. The scene of an accident is properly a controlled situation and is no place for bargaining as to rates of charge. Clearly, the motoring public is at a disadvantage in such circumstances and it is then that the unscrupulous take unfair advantage. The court finds that the regulation of rates of charge for tow truck operators on the approved list who are called to the scene of an automobile accident or breakdown is reasonable and may in fact be necessary, However, the provisions of sections 54-13 and 54-14 relating to estimates for repairs and to storage charges are beyond the purpose of the law as set forth in section 54-2, namely, to standardize the operations of the tow truck industry by licensing. *845 Said sections 54-13 and 54 — 14 are therefore declared invalid and void.
Plaintiffs also object to section 54-15 which provides for the maintenance of the approved list by the Suffolk County Police Department, a codefendant in this action, on the ground that the town may not direct that the County of Suffolk and its agency, the Suffolk County Police Department, perform services for it. The Suffolk County Police Department is the only police agency which serves the Town of Huntington. Certainly, it is the duty of the police present at an accident to control traffic at the scene and the removal of the vehicles involved. The Suffolk County Police Department has not objected to the added responsibilities which the local law has imposed on it with respect to the maintenance of the approved list and submission of reports. Plaintiffs do not claim to have been injured by the town’s action in that regard. Nor do they assert that they are aggrieved by the maintenance of the approved list by the Suffolk County Police Department. They only claim that it is constitutionally improper for a town to unilaterally order or require a county agency or department to perform services for it. However, since the constitutionality of a law may be attacked only by an aggrieved party, plaintiffs lack standing to dispute the constitutionality of the section. (St. Clair v. Yonkers Raceway, 13 N Y 2d 72.) Nevertheless, since the requirements for the approved list have been struck down the Suffolk County Police Department will be enjoined from maintaining an approved list and otherwise implementing the applicable provisions of section 54^-15.
The plaintiffs attack section 54 — 16 on the ground that removal from the approved list is too-severe a penalty for failure to abide by any one of the requirements contained in sections 54-11 through 54-14. These sections pertain to qualification for the approved list (54-11), towing rates applicable to those on the approved list (54-12), charges permitted for a written estimate of the damages to a vehicle (54 — 13) and storage charges (54r-14). All of those sections provide for the regulation of tow truck operators on the approved list. Certainly if an operator violates such regulations, the benefits and privileges of the approved list may be denied. Such denial, however, will be imposed only after a hearing before the town board as provided by section 137 of the Town Law. Furthermore, removal from the approved list is not mandatory if a violation is proven; it is still discretionary with the board. The section is therefore reasonable and valid.
*846 Accordingly, partial summary judgment is granted in favor of plaintiffs to the extent that the Town of Huntington is permanently enjoined from enforcing the following sections of Local Law Ho. 3-74: section 5444 (A) and (B) (8); section 54-9 (A); section 54411 (A) (1) and (2) (h), (c) and (d); section 54-11 (E); section 54-13; and section 54-14. The Suffolk County Police Department is permanently enjoined from maintaining an approved list and otherwise implementing the applicable provisions of section 54-15 of Local Law Ho. 3-74.