**GALACTIC TOWING, INC., a Florida Corporation, Plaintiff,**

v.

**THE CITY OF MIAMI BEACH, Defendant.**

No. 02–20877–CIV.

United States District Court, S.D. Florida.

Dec. 31, 2002.

Usher Bryn, Esq., Aventura, for Plaintiffs.

Robert Dixon, Esq., Miami Beach, for Defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HUCK, District Judge.

THIS CAUSE is before the Court on the Plaintiff's Galactic Towing, Inc. ("Galactic") Motion for Summary Judgment [DE # 19]and Defendant's City of Miami Beach ("Miami Beach") Motion for Summary Judgment [DE # 41]. Also before the Court are Galactic's Motions to Strike Affidavits [DE # 43, 44] and Miami Beach's Motion to Dismiss Second Amended Complaint and Motion for Continuance of Trial [DE # 51]. In summary, the cross-motions for summary judgment relate to Galactic's challenge to the City's regulation of the tow truck businesses operating within its jurisdiction. Resolution of Galactic's challenge requires the Court to determine the extent to which a federal statute, 49 U.S.C. § 14501(c), preempts Miami Beach's attempt to regulate the tow truck industry within its jurisdiction. The Court has reviewed the parties' motions, their respective legal memoranda and other portions of the record. For the reasons set forth below, Galactic's Motion for Summary Judgment is DENIED and Miami Beach's Motion for Summary Judgment is GRANTED.

### Background

The parties agree that the material facts are not in dispute and that this case is properly resolved on the cross motions for summary judgment.

Galactic is an automobile towing company. Galactic has brought this suit contending that certain provisions of Miami Beach's towing ordinances are preempted by the Interstate Commerce Commission Termination Act of the 1995 Federal Aviation Administration Authorization Act of 1994 ("FAAA Act"), 49 U.S.C. § 14501(c), as amended by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). Miami Beach's towing ordinance established a comprehensive system for licensing and regulating businesses which are engaged in or wish to engage in the practice of towing and storing motor vehicles which are parked on private property without that property owner's permission. Thus, the ordinance regulates nonconsensual towing. Galactic contends that, because these provisions of Miami Beach's towing ordinances are preempted, they are unenforceable against Galactic and that Miami Beach should be enjoined from enforcing them. Specifically, Galactic contends that the following provisions of Miami Beach's towing ordinances are preempted:

(1) Miami Beach Code § 106–264, which provides that:

(a) No business enterprise shall engage in the business of recovering, towing, removing and storing of vehicles parked on private real property ...unless such business enterprise shall first apply for and obtain, and subsequently maintain in unrevoked status, a **permit** issued pursuant to this article.

b) The requirement for a permit described in subsection (a) of this section is a requirement separate and apart from and in addition to any county or city requirements for occupational licenses. The required permit is a regulatory permit and not a revenue-generating permit.

(Emphasis added.)

(2) Sec. 106–266, which provides that:

(a) *Application.* All business enterprises desiring to obtain an initial permit or renew a previously issued and unrevoked permit shall submit an application in writing to the city manager or his designee on forms prescribed by the city manager. The application and all supporting documents shall be retained by the city manager.

\* \* \* \* \* \*

(b) *Standards for issuance of a permit.* The city manager or his designee shall approve the application for issuance or renewal of a license hereunder where he finds:

(1) That the application has been fully completed and submitted;

(2) That the initial application or renewal **application fee** has been paid;

(3) That **proof of insurance**, as required in section 106–263, has been met; and

(4) That the applicant has been subject to a complete background investigation as it affects the towing industry, conducted by the chief or his designee and it has been determined by the chief that:

a. The applying business enterprise, if a corporation, does not have an officer or director who is or was an officer, director, partner or sole proprietor of a business enterprise which has a currently suspended permit or has its permit revoked within five years of the date of application;

b. The applying business enterprise, if a partnership, does not have as a partner a person who is or was an officer, director, partner or sole proprietor of a business enterprise which has a currently suspended permit or has its permit revoked within five years of the date of application;

c. The applying business enterprise, if a sole proprietorship, does not have as the sole proprietor a person who is or was an officer, director, partner or sole proprietor of a business enterprise which has a currently suspended permit or has its permit revoked within five years of the date of application;

d. The permit is not revoked or currently under suspension; or

e. No fraud or wilful and knowing misrepresentation or false statement was made in the application.

(3) Sec. 106–268(a)(1), which makes it illegal to:

Recover, tow, remove or store a vehicle except upon the express instruction and **written authorization** demonstrating a signature of the property owner or agent to the business enterprise requesting the tow or removal. No such instruction shall be considered to have been given by virtue of the mere terms of any contract

or agreement between a business enterprise and a property owner. No such instruction shall be considered to have been given where the instruction occurs in advance of the actual unauthorized parking of the vehicle. No such instruction shall be considered to have been given where the instruction is general in nature and unrelated to specific, individual and identifiable vehicle which are already unauthorizedly parked.

(4) Sec. 106–268(a)(5), which provides that:

a. For the first 48 hours, store or impound a towed vehicle unless the towed vehicle is stored or impounded **within the confines of the city at an authorized storage facility;** . . . .

(Emphasis added by Galactic.)

Prior to filing this lawsuit, Galactic had been contacted by several Miami Beach property owners seeking to hire Galactic for the purpose of removing illegally parked motor vehicles. Galactic has refrained from applying for the Miami Beach towing permit and from entering into contracts with Miami Beach property owners for the removal of illegally parked vehicles because Galactic does not have a storage facility within Miami Beach. Galactic has refrained from removing illegally parked vehicles from the Miami Beach because it fears prosecution from Miami Beach for Galactic's non-compliance with the towing ordinance. In fact, Miami Beach police officers have interfered in Galactic's tow truck driver while in the process of towing disabled vehicles on Miami Beach at the request of vehicle owners.

Miami Beach responds to Galactic's challenge of its towing ordinance by asserting that the challenged provisions are genuinely responsive to Miami Beach's legitimate safety concerns and, therefore, fall within the safety exemption provided by 49 U.S.C. § 14501(c)(2)(A). Consequently, argues Miami Beach, the challenged provisions are not preempted by § 14501(c)(1).

### *Jurisdiction*

This Court has federal question jurisdiction because Galactic's claim is one" . . . arising under any Act of Congress regulating commerce or protesting trade and commerce against restraints and monopolies . . . ." and because Galactic seeks injunctive relief against the City. *See* 28 U.S.C. § 1331; *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

### *Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of

evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376(11th Cir.1996)(conclusory allegations and conjecture cannot be the basis for denying summary judgment).

### Analysis

Section 14501(c)(1) preempts regulations of''a State [or] political subdivision of a State ...related to price, route, or service of any motor carrier...with respect to the transportation of property." However, there is an exception to this preemption. Section 14501(c)(2)(A) provides that the preemption "shall not restrict the safety regulatory authority of a State [or municipality] with respect to motor vehicles." Thus, the issue before the Court is whether the challenged ordinance is a motor vehicle safety regulation which is specifically excluded from preemption.

The Supreme Court recently had the opportunity to analyze the congressional intent reflected in § 14501. *City of Columbus v. Ours Garage & Wrecker Service,* 536 U.S. 424, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). While not defining the specific perimeters of the exemption provided by § 14501(c)(2)(A) for local government's motor vehicle safety regulations, the Supreme Court did discuss Congress' purpose in enacting that exemption. The Supreme Court opined that:

> Congress' clear purpose in § 14501(c)(2)(A) is to ensure [ ] its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), "not restrict" the preexisting and traditional state police power over safety.

*Ours Garage,* 122 S.Ct. at 2236.

In reaching its opinion, the Supreme Court noted Congress' expressed intention to leave with the local governments those public safety options and responsibilities regarding motor carriers, including tow trucks, not related to the definitive goal of regulating economic aspects of motor carriers. In this regard, the Supreme Court stated that:

> These declarations of deregulatory purpose [addressing the economic authority of states over motor carriers], however, do not justify interpreting through a deregulatory prism "aspects of the State regulatory process" that Congress determined should *not* be preempted. A congressional decision to enact both a general policy that furthers a particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception. Such a construction is surely resistible here, for § 14501(c)(1)'s preemption rule and § 14501(c)(2)(A)'s safety exception to it do not necessarily conflict. The problem to which the congressional conferees attended was "[s]tate *economic* regulation"; the exemption in question is for state *safety* regulation. Corroboratively, the measure's legislative history shows that the deregulatory aim of the legislation had been endorsed by a key interest group—the American Trucking Association—subject to "some conditions that would allow regulatory protection to continue for non-economic factors, such as ... insurance [and] safety."

*Id.* (emphasis in original).

In view of the full text of § 14501(c) and the teachings of *Ours Garage,* the Court concludes that the challenged Miami Beach ordinance constitutes motor safety regulations exempted under § 14501(c)(2)(A), rather than an impermissible attempt to achieve economic goals.[1]

---

1. One representative example which clearly reflects that the towing ordinance meets Mia-

While the Eleventh Circuit Court of Appeals has yet to decide the specific issue presented here, this Court's conclusion finds strong support in a number of closely analogous and well-reasoned decisions. In *Cole v. City of Dallas*, 314 F.3d 730 (5th Cir.2002), the Fifth Circuit rejected a tow truck driver's challenge which is similar to that presented here. The Fifth Circuit held that the challenged towing regulations, which were not materially different from those which Galactic challenges, had sufficient nexus to the city's safety concerns to survive § 14501's preemptions related to price, route or service of tow truck operations. After carefully analyzing § 14501, together with *Ours Garage*, the Fifth Circuit declined "to elasticize Congress' economic goal by narrowly interpreting 'safety regulatory authority of a State with respect to motor vehicles" ' as suggested by the challenging tow truck driver. As that Court noted:

> The Dallas City Council passed the Chapter 48A amendment to address safety concerns "with respect to motor vehicles," as expressly allowed by the exception for motor vehicle safety regulations. The ordinance delineates several safety concerns that underlie the regulations found in Chapter 48A. Chapter 48A's stated policy is to protect "the public interest as it relates to the parking of vehicles on private property and to the removal of those vehicles to vehicle storage facilities without the consent

of the vehicle owners or operators." The specific criminal history requirement at issue is designed to curtail confrontation between truck operators and nonconsenting vehicle owners.... That the criminal history regulation has, at its core, concern for safety is manifest. It is difficult to imagine a regulation with a more direct protective nexus or peripheral economic burden....

In *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 769 (2d Cir.1999), the issue was whether New York City's towing ordinance, requiring licensing, display of information, reporting, record keeping, disclosure of criminal history, insurance, and posting of a bond by towing companies operating within the city, as well as requiring towers to maintain local storage and repair facilities, fell within the safety and financial responsibility exemptions of § 14501(c)(2)(A). Again, the New York City provisions, which were challenged in *Ace Auto*, were either materially similar to or, in some instances, more onerous than those challenged by Galactic.[2] The *Ace Auto* Court found that most of the challenged requirements were "so directly related to safety and financial responsibility and impose so peripheral and incidental an economic burden that no detailed analysis is necessary to conclude that they fall within the § 14501(c)(2)(A) exemptions" 171 F.3d at 776. With regard to the two aspects of New York City's

mi Beach's safety concerns, not economic concerns is § 106–268(a)(1). That regulation prohibits the removal and towing of a vehicle from private property without the expressed instruction and written authorization from the property owner. This requirement is clearly the exercise of Miami Beach's traditional police power over public safety. By requiring proper authorization for non-consensual tows, the ordinance protects both the vehicle owner and the public from towing mistakes, which may lead to dangerous confrontations, to the owner and his or her fami-

ly being stranded at a dangerous time and location, to false vehicle theft reports, which waste law enforcement's limited resources, to unnecessary hazardous tows and to similarly unsafe circumstances. The ordinance also protects against theft of vehicles from private property. Conversely, there is, at most, an insignificant economic burden placed on the tower by this regulation.

**2.** For example, Miami Beach does not have a requirement that repairs to towed vehicles take place within its boundaries.

towing ordinance which that court felt arguably presented a close question, the *Ace Auto* court held:

> The storage and repair requirements concededly present a more difficult question. Plaintiffs' attack on this issue appears to focus not on the City's regulation of vehicle storage and repair *per se*, but rather on the City's requirement that eligible towing companies maintain their own storage and repair facilities. In plaintiffs' view, these facilities requirements impose substantial barriers to market entry by new businesses insofar as they increase the cost of qualifying to participate in the City's exclusive towing programs. Plaintiffs observe, in addition, that many of the safety goals cited by the district court in support of these requirements, e.g., reducing the number of hazardous tows of damaged vehicles from one site to another, *see Ace,* 1997 WL 669891, at *10, could be met by a scheme that would impose a lesser economic burden on competition in the towing industry. The City could, for example, allow towing companies to subcontract with other facilities for storage and repair services, but still meet its safety goals by regulating the subcontracting of storage and repair.

> Plaintiffs' hypothesis of a less restrictive regulatory scheme does carry a certain appeal, in light of the substantial economic burdens imposed by the City's storage and repair regulations. But preemption analysis does not insist upon a least restrictive means test. For these regulations to escape federal preemption, it is enough, in light of the text and history of 14501(c), that the storage and repair provisions are reasonably related to the safety aspects of towing disabled vehicles and that the economic burdens thereby imposed are only incidental. Above and beyond the need to eliminate chasing, a disabled motor vehicle clearly presents a safety hazard in a municipali-

ty where vehicular traffic is so heavy, and the City has an obligation to make arrangement for its removal from the road and to place it in safe-keeping. And, because the economic burdens on interstate commerce are only incidental, the presumption against preemption of a state's police power to effect that removal supports preserving the City's storage and repair regulations. *See Plumbing Indus. Bd.,* 126 F.3d at 67 (incidental burdens insufficient to overcome presumption against preemption where ERISA statute used similar "relate to" language).

171 F.3d at 776–77.

The district court in *Hott v. City of San Jose,* 92 F.Supp. 2d 996 (N.D.Cal.2000), dismissed a towing company's action seeking to prevent enforcement of the city's regulations relating to the towing industry. San Jose's regulations required proof of insurance, information regarding relevant criminal history, display information, reporting and record keeping related to tows. The court rejected the towing company's argument that such regulations were preempted by § 14501(c)(1), finding that these regulations fit within the safety exemption and were not economic in nature. *See also Fife Enterprises v. Washington State Patrol,* No. 20571–1–III, 113 Wash.App. 1011, 2002 WL 1859192 (Wash. App. Aug. 13, 2002); *Renne v. Servantes,* 86 Cal.App.4th 1081, 103 Cal.Rptr.2d 870 (2001).

The Court finds the analysis and reasoning of these analogous cases persuasive and concludes that the City's challenged towing ordinance falls within the exemption established under § 14501(c)(2)(A). In reaching its conclusion that each challenged provision meets Miami Beach's legitimate safety concerns, rather than economic concerns, the Court relies primarily on the specific language in each such provision. The Court also finds support in the expressed general legislative intent for

Miami Beach's towing ordinance, set forth in Miami Beach Code § 106–257:

> This city commission finds and determines that the unauthorized parking of vehicles that cannot be removed constitutes a public nuisance and a public emergency effecting the property, public safety and welfare of the citizens and residents of the city.

The language of the ordinance is itself sufficient to support the Court's conclusion. However, in addition, Miami Beach has submitted the unrefuted testimony of its city manager and its assistant chief of police to support its contention that the ordinance was aimed at safety, not economic goals. According to their testimony, the ordinance prevents safety hazards which occur when a motor vehicle becomes disabled in heavy traffic and creates a safety hazard. When this occurrence takes place, Miami Beach is obligated to quickly remove the disabled vehicle. Once that responsibility has been undertaken, Miami Beach also has the responsibility of placing the vehicle in safe-keeping. The ordinance reduces the distance of hazardous tows of vehicles. Miami Beach has a limited number of police officers. Causing the police officers to go out of jurisdiction for the purpose of dealing with towing issues lessens police presence within Miami Beach and adversely effects police response time and, thereby, adversely impacts the safety of Miami Beach's residents and visitors. Storing vehicles in facilities outside of Miami Beach results in its police officers also being outside the City's jurisdiction and, consequently, unable to perform required police functions in a timely manner. The ordinance requires the two companies to maintain a lot within Miami Beach to protect residents and the numerous tourists that visit Miami Beach. Without the requirement of local storage, residents and tourists would have to travel great distances and into unknown, possibly unsafe areas, where many tow companies' lots are located, in order to retrieve their vehicles. The towing ordinance requires tow companies to apply for and obtain a permit from Miami Beach before towing vehicles. The purpose of this requirement is to protect Miami Beach's residents and tourists by creating a system of authorized, known tow companies. In the event of non-consensual tows, vehicle owners may now quickly learn from the Miami Beach Police Department whether their vehicles were towed or stolen. While Florida law requires tow companies to inform local police department of towed vehicles within thirty (30) minutes of the tow, failures to observe this requirement are common. It is in the interests of public safety that Miami Beach requires that each tow company apply for and obtain a permit in order to keep track of towing operators operating within Miami Beach and of each towed vehicle. If the existing procedures are followed, the Miami Beach Police Department is able to call permitted tow operators in order to promptly determine whether a missing vehicle has been towed. However, in the absence of the permitting process, because there are over 1200 towers operating within Miami–Dade County, it would be virtually impossible for the Miami Beach Police Department to determine in a prompt, reasonable manner whether the missing vehicle was towed and who made the tow. This would leave the city's police to deal with irate vehicle owners, a situation that can become hostile. In addition, the ordinance creates a safer environment: a) by eliminating the dangerous practice of "chasing," in which tow truck operators monitor police radio transmissions to learn of vehicular accidents and then race each other, often recklessly, to accident

scenes to earn fees for the resulting towing and ancillary repair work; b) by preventing those safety hazards caused by a disabled motor vehicle in Miami Beach, where vehicular traffic is so very heavy and the police department is required to make arrangements for removal of the vehicle from the road and to place it in safe-keeping in lots within the city's jurisdiction; and c) by reducing the out-of-jurisdiction time which Miami Beach police officers would have to expend while examining reported stolen vehicles at remote storage sites or investigating reports resulting from vehicles being towed without the owner's knowledge or consent. The ordinance's insurance requirement protects the city's residents and visitors and decreases the number of disputes with which police officers must deal. The testimony of these two representatives of Miami Beach further supports its contention that the towing ordinance was intended to and actually does respond to Miami Beach's safety concerns.

### Conclusion

The Court concludes that Galactic has not carried its burden of establishing that the challenged provision of Miami Beach's towing ordinance are preempted by federal law and, therefore, unenforceable against Galactic. Moreover, the Court concludes that those provisions relate to and promote Miami Beach's legitimate safety concerns, not its economic concerns. Accordingly, Galactic's Motion for Summary Judgment is DENIED and Miami Beach's Motion for Summary Judgment is GRANTED. Galactic's Motion to Strike Affidavits is DENIED, Motion to Dismiss Second Amended Complaint and Motion for Continuance of Trial are DENIED as moot.