**LOYAL TIRE & AUTO CENTER, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**TOWN OF WOODBURY, Defendant–Appellant–Cross–Appellee,**

**Sheila Conroy and Robert Kwiatkowski, Defendants–Cross–Appellees,**

**Lorraine McNeill, Geraldine Gianzero, Henry Dobson, and Holly Gubernick Borzacchiello, Defendants.**

Docket Nos. 05–1295–CV(L), 05–1471–CV(XAP).

United States Court of Appeals, Second Circuit.

Argued: Jan. 25, 2006.

Decided: April 12, 2006.

Michael P. McGovern, The McGovern Law Firm, Knoxville, TN (Michael J. Weiner and Richard H. Sarajian, of counsel, Montalbano, Condon & Frank, P.C., New City, NY), for Plaintiff–Appellee–Cross–Appellant.

William G. Kelly (Frank J. Ciano and Robert Varga, of counsel), Goldberg Segalla, LLP, White Plains, NY, for Defendant–Appellant–Cross–Appellee.

Before: WALKER, Chief Judge, LEVAL and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Defendant-appellant-cross-appellee the Town of Woodbury ("Woodbury") appeals from a judgment of the United States District Court for the Southern District of New York (Brieant, J.), entered on February 8, 2005. Seeking damages, a declaratory judgment, and injunctive relief, plaintiff-appellee-cross-appellant Loyal Tire & Auto Center, Inc. ("Loyal Tire") challenged a provision of Woodbury's municipal towing law that requires all tow companies licensed by Woodbury to maintain a tow yard within one mile of the town police department. Loyal Tire argued that the law is preempted by 49 U.S.C. § 14501 and violates its rights to due process and equal protection and the dormant Commerce Clause. The district court granted summary judgment to Loyal Tire after concluding that federal law preempts the municipal towing law both because New York state had not delegated to towns its safety regulatory authority over intrastate carriers of property and because Woodbury's municipal towing law did not constitute an exercise of safety regulatory authority. We hold that (1) New York state delegated to towns its safety regulatory authority over local tow-truck operations, but Woodbury's municipal towing law is preempted by 49 U.S.C. § 14501 because it is not genuinely responsive to safety concerns; (2) the district court properly declined to award damages to Loyal Tire under 42 U.S.C. § 1983 on the § 14501 preemption claim because the statute is not enforceable via § 1983 but erred by awarding attorneys' fees to Loyal Tire under 42 U.S.C. § 1988(b) on that claim; (3) the district court properly dismissed Loyal Tire's due process and equal protection claims but erred by failing to reach Loyal Tire's claim for damages under the dor-

mant Commerce Clause; and (4) the district court properly dismissed Loyal Tire's claim against defendants-cross-appellees Town Supervisor Sheila Conroy ("Conroy") and Police Chief Robert Kwiatkowski ("Kwiatkowski") for conspiring to violate its rights under the Constitution and laws of the United States. We affirm in part and reverse in part the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Michael Hagopian, the former president of Loyal Service Center, Inc. ("Loyal Service") and current owner of Loyal Tire, first applied in 1987 for Loyal Service to be placed on the list of tow companies, known as the "rotating call list," that the Woodbury Police Department uses to contact tow companies when their services are needed.[1] Loyal Service commenced litigation in state court after Woodbury refused to consider its application, but withdrew the litigation when Woodbury adopted a law in 1988 that required, as a prerequisite for obtaining a license to be on the list, that tow companies maintain a tow yard within one-half of a mile of the town line. Loyal Service was thereafter granted a license and began participating in the rotational towing list.

In 1989, Hagopian moved his company to the Village of Harriman and began to operate under the name Loyal Tire. Loyal Tire is located within one-half of a mile of the Woodbury town line and was licensed to participate in the rotational tow list. Loyal Tire contends, however, that the police department enforced the 1988 law, and its subsequent iterations, in a discriminatory manner and that many of these acts

---

1. Towers on the list are called by the police department to respond when a vehicle must be towed. Owner-initiated tows, however, do not involve the list.

of discriminatory enforcement occurred between June 2000 and June 2003, when Loyal Tire filed the complaint in this action. Loyal Tire complains principally of two purported acts of discriminatory enforcement. First, Loyal Tire alleges that Kwiatkowski refused to renew its towing permit in 1995 until it complied with regulations requiring a fence around its impoundment facility, while a local operator who maintained a tow yard within the town limits was permitted to continue operating between 1999 and 2001 notwithstanding its non-compliance with the same regulation. Second, the police department purportedly skipped Loyal Tire's turn on the rotating call list each time Loyal Tire had responded to an owner-initiated tow request or a call from the Village of Harriman's rotational towing list. Local operators, however, were not penalized even when they refused tow requests on certain occasions.

Loyal Tire attributes much of Woodbury's purported ill-will against it to an incident involving town board member Holly Gubernick Borzacchiello's father, who died in an automobile accident on November 2, 2000. After Loyal Tire towed the car from the scene of the accident, Kwiatkowski wrote a letter to the town board, dated November 29, 2000, in which he complained about several aspects of Loyal Tire's services towing the wrecked car. Kwiatkowski complained that Loyal Tire had overcharged for its services and that it had insisted that the family pay cash for its towing services. Kwiatkowski concluded his letter by referencing the municipal law requiring all tows requested by the police department to be performed by a company with a facility within one-half of a mile of the town line.

The town board convened less than one week later, on December 7, 2000, to discuss draft amendments, proposed in mid-November, to the municipal towing law. After one of the board members read Kwiatkowski's letter, the police chief expressed his discontent with the way Loyal Tire conducted business. Several board members also commented negatively on Loyal Tire and the November 2 incident.

Apparently no further public action was taken on the draft amendments to the towing law for a number of months. By letter dated July 3, 2001, Loyal Tire inquired about its status and complained that the police department had exhibited favoritism in its management of the rotating tow list. At a town board meeting on December 17, 2001, several board members stated that complaints had been made against Loyal Tire, but that no complaints had been made against other towers on the town's list. No definitive action was taken, however, with respect to the proposed amendments to the municipal towing law.

At a town board meeting on April 29, 2002, several board members expressed the view that towing permits should be limited to businesses located in Woodbury. After the town attorney expressed uncertainty about the legality of such a policy, Kwiatkowski indicated that business should be kept within the community, and a board member stated that most complaints about tow companies had been directed against towing businesses located in other communities. At a May 13, 2002 meeting, the town attorney informed the board that it could adopt a law requiring that a tow company licensed by the town maintain an impound facility within a given proximity to the town line, but that it could not limit the availability of licenses to those applicants with a tow yard in town. Notwithstanding this advice, the town attorney subsequently drafted legislation requiring, *inter alia*, that a tower must maintain a facility within a one-mile radius of the Woodbury police station in order to

receive a license to be placed on the town's rotating tow list.

A public hearing was held on November 21, 2002, to entertain comments on the proposed amendments to the town towing law. Kwiatkowski commenced the proceeding by commenting that the amendments were in the interest of public safety. Loyal Tire challenged a number of the proposed law's provisions at the meeting, including the provision that would require licensees to maintain an impound facility within a one-mile radius of the police department.[2] A second public hearing was held on January 16, 2003, at which time the board adopted the proposed amendments, including the "one-mile radius" rule.

Loyal Tire commenced this action in New York Supreme Court, Orange County in June 2003. Loyal Tire's complaint alleged, *inter alia*, that Woodbury's towing law was preempted by 49 U.S.C. § 14501 and violated its rights to due process and equal protection and the dormant Commerce Clause. Loyal Tire sought damages under 42 U.S.C. § 1983, a declaratory judgment, and injunctive relief. Loyal Tire's complaint alleged also that the town board and Kwiatkowski had conspired to violate its rights under the Constitution and laws of the United States. Woodbury removed the case to federal court in July 2003.

While this litigation was pending, Kwiatkowski informed the town board of several safety-related justifications for the provision of the towing law requiring the maintenance of a tow yard within a one-mile radius of the police department. In a letter dated July 30, 2003, bearing the subject line "Loyal Tire & Auto vs. Town of Woodbury, Defense Issues," he identi-

fied two safety concerns: (1) vehicle owners who walk first to the police station to retrieve their cars could then walk in relative safety on sidewalks within the one-mile radius to a tow yard; and (2) using tow companies located outside of Woodbury would require the town to send police officers outside of the jurisdiction and dilute the police presence in Woodbury.

After Loyal Tire discontinued its case against all the individual defendants, except for Supervisor Conroy and Chief Kwiatkowski, the remaining defendants moved for summary judgment. By order dated January 14, 2004, the district court denied defendants' motion and granted summary judgment, *sua sponte*, to Loyal Tire. The district court ruled that New York state had not delegated to towns its safety regulatory authority over local tow-truck operations, and held, in the alternative, that the geographical limitation in the municipal towing law did not relate to safety. Having concluded that the towing law is preempted by 49 U.S.C. § 14501(c)(1), the district court stated that it "need not reach the issue of the dormant Commerce Clause in order to grant summary judgment in favor of the non-moving party on this claim," and dismissed Loyal Tire's due process and equal protection claims. The district court then held that Conroy was entitled to legislative immunity for her role in enacting the municipal towing law and that Kwiatkowski was immune from liability for exercising his First Amendment rights and expressing his view that such a law was necessary. Finally, the district court stated that "[t]he statutory claim in this case under Title 49 is inextricably intertwined with the Constitutional claims under § 1983" and that Loyal Tire "ap-

---

**2.** Nothing in the record contemporaneous to the decision-making process explains how or why the board chose this line of demarcation.

pear[s] to be a prevailing party within 42 U.S.C. § 1988 as to his § 1983 claims." The district court therefore granted Loyal Tire attorneys' fees and costs as a prevailing party on its preemption claim.

On appeal, Woodbury contends that New York state delegated to towns its safety regulatory authority over local tow-truck operations and that the municipal law at issue in this case is rationally related to safety. Loyal Tire cross-appeals and argues that the district court erred by declining to reach its Commerce Clause claim, dismissing its equal protection and due process claims, and concluding that the remaining individual defendants, Conroy and Kwiatkowski, are immune from suit.

## DISCUSSION

Woodbury's municipal towing law, adopted in January 2003, includes a statement of legislative intent in § 283-1 providing that "regulations for the prompt and safe removal of disabled, abandoned, and impounded vehicles from public roadways within the Town is necessary for the public health, safety and general welfare of the residents and traveling public within the Town." The law includes a number of regulations, one of which is pertinent to this appeal. Section 283-7(A)(4) provides that a towing license is available only to applicants who "maintain[ ] an impound/storage facility within a one-mile radius of the Town of Woodbury Police Department." A towing license is necessary in order to be placed on the town's rotating call list.

## I.

The Interstate Commerce Act, as amended by the Federal Aviation Administration Authorization Act of 1994 and the ICC Termination Act of 1995, generally preempts state and local regulation "related to a price, route, or service of any motor carrier … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Several enumerated matters, however, are not covered by the preemption provision. The "safety" exception to the preemption provision is at issue on this appeal. That exception provides that the provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." Id. § 14501(c)(2)(A). The Supreme Court ruled in City of Columbus v. Ours Garage and Wrecker Service, Inc., 536 U.S. 424, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002), that the state power preserved in § 14501(c)(2)(A) may be delegated to municipalities, "permitting them to exercise safety regulatory authority over local tow-truck operations." Id. at 428, 122 S.Ct. 2226. In determining whether § 14501(c)(1) preempts the municipal towing law at issue in this case or the municipal law falls within § 14501(c)(2)(A)'s exception, we are presented with two questions: (1) whether New York state has delegated to towns the power to exercise safety regulatory authority over local tow-truck operations, and (2) whether the municipal law at issue in this case is "genuinely responsive to safety concerns." See Ours Garage, 536 U.S. at 442, 122 S.Ct. 2226. We address each question in turn.

### A.

The parties rely on various state statutes in arguing that New York state has or has not delegated to towns its safety regulatory authority over local tow-truck operations. We hold that it has.

Both parties invoke the New York Vehicle and Traffic Law ("VTL"). Section 1600 of the VTL provides that state law with respect to vehicles and traffic "shall

be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any local law . . . *in conflict with* the provisions of this chapter unless expressly authorized herein." N.Y. Veh. & Traf. Law § 1600 (McKinney's 1996) (emphasis added). Section 1642 of the VTL applies to cities having a population in excess of one million and provides that the local laws of such cities "shall supersede the provisions of this chapter where inconsistent or in conflict with respect to" enumerated subject matters. *Id.* § 1642(a). Section 1660, by contrast, which applies to towns such as Woodbury, enumerates a number of things that towns may regulate, such as erecting certain road signs or traffic-control signals, but includes no provision permitting towns to supersede state law.

Interpreting these provisions of the VTL, the district court concluded that New York state has not delegated to towns its authority to establish safety regulations covering intrastate motor carriers of property, such as towers. The district court found it significant that § 1642(a)(15), which applies to New York City, expressly delegated the authority to regulate the

> [t]owing and pushing of vehicles, including, but not limited to, the establishment of minimum insurance levels for and the licensing and regulation of persons engaged in the business of towing, and the fixing of maximum charges to be made by such persons for the towing and storage of disabled vehicles.

The district court reasoned that the absence of a parallel provision in § 1660

indicated an intent not to delegate similar regulatory authority to towns.[3]

Loyal Tire relies primarily on the VTL and reiterates the argument accepted by the district court. Woodbury relies most heavily on New York Municipal Home Rule Law § 10(1)(ii)(a)(12) (McKinney's 2005), which provides that every local government has the power to adopt local laws relating to "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein" and states that this power "shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses." Woodbury also invokes New York Town Law § 136(1) (McKinney's 2003), which states that towns may provide for the licensing of and otherwise regulate "the running of . . . automobiles or other vehicles for the transportation of persons or property over or upon the streets of a town for hire, and soliciting either on private property or on the public highway or running therefor." Woodbury further contends that § 1660(a)(8) of the VTL delegated to towns the authority to enact laws concerning towing. *See supra* note 3.

■ The VTL is not dispositive of the preemption issue in this case. Most fundamentally, the VTL is concerned with traffic regulation and ensuring that regulations governing traffic are uniform throughout the state. *See People v. City of Hornell*, 256 A.D. 113, 8 N.Y.S.2d 976, 978 (4th Dep't 1939) (affirming opinion below) (stating that the purpose of the VTL "was to formulate a uniform law throughout the State . . . regulating the use of

---

**3.** The statutory provision governing towns states, *inter alia,* that towns may "[p]rovide for the removal and storage of vehicles parked or abandoned on highways during snowstorms, floods, fires or other public emergencies, or found unattended where they constitute an obstruction to traffic or any place where stopping, standing or parking is prohibited and for the payment of reasonable charges for such removal and storage by the owner or operator of any such vehicle." N.Y. Veh. & Traf. Law § 1660(a)(8).

motor vehicles upon streets and highways of this State"). Thus, a town may not regulate tow trucks' use of a public road unless the VTL permits it to do so and may not require an operator's license before a tow truck may be driven on public roads within the town. *See Richard's Serv. Station, Inc. v. Town of Huntington,* 79 Misc.2d 834, 361 N.Y.S.2d 497, 505 (N.Y.Sup.Ct.1974) (distinguishing between a license to engage in the tow truck business in a town, which towns may regulate, and a license to operate a tow truck over public roads, which the VTL does not permit towns to regulate), *aff'd,* 47 A.D.2d 963, 367 N.Y.S.2d 296 (2d Dep't 1975). In short, a town may not regulate traffic, except as permitted by the VTL.

Nothing in the VTL, however, limits a town's authority to regulate businesses that happen to be motor carriers. As observed by the state court in *Richard's Service Station,* there is a significant distinction between requiring a tow truck operator to obtain a license to operate a tow truck in a town, which is prohibited by VTL § 1604, and requiring a tow company to obtain a license before being placed on a town's rotational towing list. 361 N.Y.S.2d at 505. The former regulation relates to traffic and falls within the purview of the VTL; the latter regulation governs business and is only incidentally related to traffic. Mindful of this distinction, we read § 1642(a)(15) of the VTL not to provide a specific exception for New York City to license towing businesses, which it may do without the authority provided by the VTL, but to empower the city to issue operator's licenses to persons engaged in the business of towing. *See* N.Y.C. Admin. Code § 20–498(b) (setting forth requirements to obtain tow-truck operator's license in New York City). Stated differently, the provision permits New York City to regulate matters within the purview of the VTL that towns are not authorized to regulate, not to regulate business, which is beyond the ambit of the VTL. We thus reject Loyal Tire's argument that the VTL should be read to limit towns' authority to regulate businesses, including the safety-related aspects of those businesses. Insofar as the municipal law at issue in this case relates not to traffic, but to requirements for obtaining a license to be on a rotating tow list, the law falls beyond the scope of the VTL.[4]

Several decisions of New York state courts support this view. At least one New York state court has explicitly stated that towns have the authority to regulate and license the towing business, relying on the Municipal Home Rule Law and the Town Law. *See Richard's Serv. Station,* 361 N.Y.S.2d at 504. The decision of the New York Court of Appeals in *Wharram v. City of Utica* assumed that towns have the authority to regulate towing. *See* 56 N.Y.2d 733, 734–35, 451 N.Y.S.2d 728, 436 N.E.2d 1331 (1982) (holding that a city ordinance requiring tow companies to maintain their places of business within the city limits violates General Municipal Law § 80); *see also Dun–Rite Towing, Inc. v. Village of Tarrytown,* 215 A.D.2d 654, 628 N.Y.S.2d 326, 327 (2d Dep't 1995) (stating that a municipal policy requiring tow companies to maintain tow yards within one-half of a mile of the village's borders does not violate General Municipal Law § 80). None of these decisions suggests that the VTL limits towns' safety regulatory authority over tow-truck opera-

---

4. We note that § 1660(a)(8) of the VTL speaks to towing only insofar as it is relevant to traffic concerns, and permits the towing of cars that obstruct traffic or are unattended in places where stopping is prohibited. We note also that § 1642(a)(15) similarly provides authority to regulate traffic, as opposed to the business aspects of towing.

tions other than by precluding towns from enacting traffic laws applicable to tow-truck operators that conflict with the VTL.

■ Because the Vehicle and Traffic Law does not speak to the authority of cities, villages, and towns to regulate the business and safety aspects of towing, we see nothing in the statute that limits the delegation of authority to towns via the Municipal Home Rule Law and the Town Law to regulate businesses in the interest of public safety. We hold that New York state has delegated its safety regulatory authority over local tow-truck operations to towns such as Woodbury and turn to consider whether the municipal regulation at issue in this case falls within the safety exception to the preemption provision of 49 U.S.C. § 14501.

## B.

In *City of Columbus v. Ours Garage and Wrecker Service*, the Supreme Court emphasized that § 14501(c)(2)(A) shields from preemption only state and municipal laws enacted pursuant to "safety regulatory authority" and stated that any regulation "that is not *genuinely responsive* to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." 536 U.S. at 44, 122 S.Ct. 22262 (emphasis added). As a preliminary matter, the parties dispute the appropriate test for determining whether a regulation falls within the safety exception of § 14501(c)(2)(A). Woodbury relies on our ruling in *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir.1999), which required only that a regulation be "reasonably related to the safety aspects of towing," *id.* at 777, to argue that the standard is not a strict one. Loyal Tire, by contrast, argues that the Supreme Court's later "genuinely responsive" formulation in *Ours Garage* imposes a stricter requirement than the "reasonable relation" test of *Ace Auto*

*Body*. We note that we may reconsider a prior panel's holding if, *inter alia*, an intervening Supreme Court decision overrules our holding or casts doubt on our controlling precedent. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir.2005).

■ We agree with Loyal Tire that the Supreme Court's formulation evinces a concern with legislative intent and purpose that is not evident in the test we articulated in *Ace Auto Body*. Little imagination is necessary to recognize that a regulation could be reasonably related to safety without being genuinely responsive to safety concerns. Following *Ours Garage*, we no longer consider simply whether a regulation is reasonably related to safety but must determine whether, in light of the legislative body's purpose and intent, the regulation is "genuinely responsive" to safety concerns. *See Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th Cir. 2005) ("[T]he Supreme Court tells us that our focus in a preemption case like this one is whether the purpose and intent of the body passing the law at issue, whether state or municipality, was truly safety."). In making that determination, we must consider any specific expressions of legislative intent in the statute itself as well as the legislative history, and we must assess any purported safety justifications asserted by the state or municipality in light of the existing record evidence.

Woodbury cites the statement of legislative intent in § 283–1 of its municipal towing law and argues that this provision indicates that Woodbury adopted the "one-mile radius" rule as an exercise of its safety regulatory authority over tow-truck operations. Both the Ninth and the Eleventh Circuits have recognized the importance of legislative intent in determining whether a regulation is genuinely responsive to safety. *See Tillison*, 406 F.3d at

1129; *Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1253 (11th Cir.2003). In *Tillison*, the Ninth Circuit found it significant that, after a federal district court ruled that a particular statutory provision was not related to safety, the California legislature amended the statute to clarify that the specific provision was, in fact, safety related. 406 F.3d at 1129–30. In *Galactic Towing*, the Eleventh Circuit concluded that a general statement of legislative intent in a city towing ordinance indicating that the ordinance as a whole was in the interest of public safety constituted a significant articulation of a public safety purpose. 341 F.3d at 1253. Here, § 283–1 of Woodbury's towing law is a general, prefatory provision which states that the towing regulations as a whole are in the interest of public safety. We accord deference to this general expression of legislative intent, but this expression cannot be given controlling weight in light of the Supreme Court's directive to determine whether the legislation is *genuinely responsive* to safety concerns.

We must review also the extant legislative history of Woodbury's municipal towing law. Although Woodbury has produced the affidavits of several board members indicating that the municipal towing law was adopted for public safety reasons, no contemporaneous evidence of legislative intent in the record indicates that the geographic limitation of § 283–7(A)(4) was adopted as an exercise of safety regulatory authority. To the contrary, the minutes from town meetings between December 2000 and January 2003 contain no discussion whatsoever of safety concerns, but instead are replete with expressions of dissatisfaction with services provided by Loyal Tire and a desire to exclude Loyal Tire, as well as other out-of-town businesses, from the town's rotating tow list. The minutes indicate that

board members, with the town attorney, sought to limit eligibility for a towing license to companies located in Woodbury without violating state or federal law for reasons having nothing to do with safety. We see no evidence in the legislative history that the "one-mile radius" rule was actually intended as a response to safety concerns. The legislative history suggests not that the municipal towing law was genuinely responsive to safety, but that the town board was motivated to exclude Loyal Tire from Woodbury's rotating call list because the board was dissatisfied with Loyal Tire's services.

In addition to considering the expression of legislative intent in the statute itself and the legislative history, we must assess also the three specific ways in which Woodbury argues that its "one-mile radius" rule is genuinely responsive to safety concerns. First, Woodbury contends that the rule will reduce the distance of dangerous tows. Second, Woodbury claims that police officers are often required to go to tow yards on police business and that the rule requiring tow yards to be within a one-mile radius of the police station ensures that the police presence in Woodbury will not be diluted by requiring officers to leave town to attend to these matters. Third, Woodbury argues that a person who walks to the police station before retrieving his or her car from a tow yard will be able to walk in relative safety on sidewalks within the designated area; by contrast, it would be dangerous to walk beyond the one-mile perimeter where there apparently are no sidewalks. We address each of these purported safety justifications in turn.

■ The record simply does not support Woodbury's argument that the law is responsive to safety insofar as it will reduce the distance of dangerous tows. Loyal Tire is located one-half of a mile beyond

the town line and 2.2 miles from the police department. It is conceivable that many tows performed by Loyal Tire would be shorter than tows performed by tow companies with tow yards within one mile of the police station. For example, the shortest tow Loyal Tire could perform in Woodbury would begin at the town line and would be one-half of a mile in length. For a company located directly one mile on the other side of the police department, the same tow would be over two and one-half miles. We have no difficulty envisioning other situations in which Loyal Tire would be substantially closer, both in response time and in actual distance, to an accident scene than would a tower with a facility within one mile of the police station. As a result, this justification fails to support Woodbury's argument that the law is genuinely safety-related.

Woodbury's second argument, that diluted police presence is a genuine safety-related justification for the law, is not supported by record evidence. If police are required to leave the town limits to inspect towed cars at tow yards, the argument goes, fewer police will remain in Woodbury to respond to emergencies and other police business. In *Galactic Towing, Inc. v. City of Miami Beach*, 274 F.Supp.2d 1315 (S.D.Fla.2002), the district court found a similar argument persuasive. *Id.* at 1322 ("Causing the police officers to go out of jurisdiction for the purpose of dealing with towing issues lessens police presence within Miami Beach and adversely [a]ffects police response time and, thereby, adversely impacts the safety of Miami Beach's residents and visitors."). We ex-

press no view of this rationale as a general matter, but we do not find it persuasive on the facts of this case. Kwiatkowski's deposition testimony indicated that Woodbury police officers frequently cooperate with the police department in the Village of Harriman, where Loyal Tire is located, and frequently assist the Harriman police in responding to accidents and in investigating crimes. Record evidence thus indicates that Woodbury police officers regularly work in the very geographic area the town argues they should not be required to visit on towing matters. The record is devoid of any evidence, however, establishing the frequency with which police officers must go to tow yards on official business or the amount of time an inspection at a tow yard typically requires. In the absence of record evidence suggesting that the frequency or duration of police officers' visits to tow yards is in some way more meaningful or substantial than the work they frequently perform in the Village of Harriman, it is impossible to conclude that Woodbury enacted the law for genuine safety reasons.[5] In sum, in light of the fact that Woodbury police frequent Harriman for work purposes, a reasonable juror could not conclude that requiring police officers periodically to leave the one-mile radius to attend to towing matters would divert them from their duties in an appreciable way.

Finally, Woodbury contends that sidewalks exist within a one-mile radius of the police department, and largely not outside the radius, and that, as a result, people walking from the police department to retrieve their cars can walk in relative safety

---

**5.** Moreover, we note that the "one-mile radius" regulation is more restrictive than it would need to be if it were actually intended to maintain police presence in Woodbury. A law that set the geographical boundary at the town line, while perhaps invalid for other reasons, would equally prevent the dilution of

police presence in town. Although we noted in *Ace Auto Body* that the analysis "does not insist upon a least restrictive means test," 171 F.3d at 777, the gap between the law and its purported purpose suggests that the law was not actually motivated by this concern.

to tow yards within that one-mile perimeter. There is no record evidence, however, establishing whether people must first go to the police station before retrieving a towed automobile in all cases or even whether there are some limited circumstances in which they must do so. Moreover, the fact that Kwiatkowski could remember only one person who had ever walked from the station to retrieve a towed car and that licenses could be conditioned on the requirement that a tower transport walkers from the police station to its tow yard—an offer Loyal Tire made—makes it difficult to conclude that the law was genuinely responsive to concerns about the safety of walkers. The evidence Woodbury has presented in support of this safety-related justification is so thin and *post-hoc* in nature, especially when considered in light of the extensive evidence of Woodbury's discriminatory motivation, that no reasonable factfinder could believe that § 283–7(A)(4) was enacted in response to this concern.

Viewing the evidence in the light most favorable to Woodbury, and drawing all reasonable inferences in its favor, a reasonable factfinder could not conclude that the "one-mile radius" rule is genuinely responsive to safety concerns. The general, prefatory statement of legislative intent in § 283–1 is contradicted by the legislative history, which indicates that Woodbury

enacted § 283–7(A)(4) to exclude Loyal Tire, and other out-of-town businesses, from its rotating call list. Moreover, Woodbury's safety-related justifications for the rule either wither under scrutiny as a matter of logic or lack basis in fact. We therefore find no error in the district court's conclusion that § 283–7(A)(4) of Woodbury's municipal towing law is not genuinely responsive to safety concerns and is thus precluded by § 14501(c)(1).[6]

## II.

After the district court held that Woodbury's municipal towing law is preempted by § 14501(c)(1), it held that it did not need to reach Loyal Tire's claim under the dormant Commerce Clause. The district court then dismissed Loyal Tire's due process and equal protection claims and awarded Loyal Tire no damages under 42 U.S.C. § 1983 for these claims. The district court nonetheless awarded Loyal Tire attorneys' fees and costs under 42 U.S.C. § 1988(b) after concluding that "[t]he statutory claim in this case under Title 49 is inextricably intertwined with the Constitutional claims under § 1983." We conclude that the district court erred by awarding Loyal Tire attorneys' fees and costs under § 1988 on the basis of the preemption claim. We further conclude that the district court erred by failing to reach Loyal

---

**6.** Our ruling in *Ace Auto Body* also informs our analysis. In *Ace Auto Body,* we considered a number of provisions of the New York City Administrative Code that we found to be "reasonably related to the safety aspects of towing disabled vehicles." 171 F.3d at 777. One of those provisions required towers to maintain their own storage and repair facilities. The law, however, did not require towers to maintain such facilities in any particular geographic location. We recognized that the provision raised a "difficult question," *id.* at 776–77, but ultimately reasoned that the rule would reduce the number of hazardous tows of damaged vehicles from one site to

another by requiring towers to take damaged vehicles directly to a storage and repair facility. We concluded that this purpose was reasonably related to safety and emphasized that a reasonable relationship was all that was necessary. *Id.* at 777. Nothing in *Ace Auto Body* controls the resolution of this case. Woodbury's law requires not only that towers maintain tow yards, but that those tow yards be located within a one-mile radius of the police department. Moreover, we find that, whether or not the law is reasonably related to safety, it is not genuinely responsive to safety concerns.

Tire's dormant Commerce Clause claim, and we affirm the dismissal of Loyal Tire's due process and equal protection claims.

### A.

The district court awarded attorneys' fees to Loyal Tire pursuant to § 1988(b) solely because Loyal Tire prevailed on its claim that Woodbury's municipal law is preempted by § 14501(c)(1). Woodbury contends that § 14501 does not create individual rights enforceable under § 1983 and that, as a result, the district court erred by awarding Loyal Tire attorneys' fees under § 1988(b), which are available to a "prevailing party" on a claim under § 1983. We agree.

As a preliminary matter, we note that Loyal Tire's right to bring an action seeking declaratory and injunctive relief from municipal regulation on the ground that federal law preempts that regulation is undisputed. *See Ours Garage*, 536 U.S. at 430–31, 122 S.Ct. 2226 (considering, without discussing the jurisdictional basis for the suit, plaintiff's claim that federal law preempted the defendant city's tow-truck regulations); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 321 (2d Cir. 2005). We have previously explained that "[a] claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law" under § 1983 and that "[a] claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity." *Western Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 225 (2d Cir.1987). Whether § 14501 gives rise to a right enforceable under § 1983 is a different matter.

The Supreme Court recently clarified, in *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the inquiry that courts must undertake to determine whether a statute creates rights enforceable under § 1983. The Court in *Gonzaga* explained that only *"rights,* not the broader or vaguer 'benefits' or 'interests,' . . . may be enforced under the authority of that section." *Id.* at 283, 122 S.Ct. 2268; *see also Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*"). The Court stated that the inquiry requires "a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries" and that, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights," there is no basis for a suit under § 1983. *Gonzaga*, 536 U.S. at 285–86, 122 S.Ct. 2268. The Court held in *Gonzaga* that the statute at issue in the case did not create new rights enforceable under § 1983 because it (1) contained no rights-creating language; (2) had an aggregate, not individual, focus; and (3) was spending legislation that focused primarily on the government's allocation of resources. *Id.* at 290, 122 S.Ct. 2268.

The Supreme Court's decision in *Blessing*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), as clarified in *Gonzaga*, provides three traditional factors that courts consider in determining whether statutory language is rights-creating. " 'First, Congress must have intended that the provision in question benefit the plaintiff.' " *Wachovia Bank*, 414 F.3d at 321 (quoting *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353). That is, we must look to whether the statutory text is " 'phrased in terms of the persons benefited.' " *Gonzaga*, 536 U.S. at 284, 122 S.Ct. 2268 (quoting

*Cannon v. Univ. of Chi.,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). " 'Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States.' " *Wachovia,* 414 F.3d at 321–22 (quoting *Blessing,* 520 U.S. at 340–41, 117 S.Ct. 1353 (internal citations and quotation marks omitted)).

Applying these factors, we conclude that § 14501 may not be enforced through § 1983. Section 14501(c)(1) requires state and local authorities to refrain from regulating motor carriers of property but does not expressly grant any rights to individual motor carriers. The statute, which provides that a state or municipality may not "enact or enforce" certain kinds of laws governing motor carriers of property, 49 U.S.C. § 14501(c)(1), is not "phrased in terms of the persons benefitted." *Cannon,* 441 U.S. at 692 n. 13, 99 S.Ct. 1946. Instead, it forbids certain state and local legislation. Moreover, because the statute focuses on the regulated actors (state and local authorities), it has an aggregate, rather than an individual, focus. We therefore hold that § 14501(c)(1) may not be enforced via § 1983.[7]

█ Our pre-*Gonzaga* precedent strongly supports this conclusion. In *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91 (2d Cir.1986), we held that a parallel provision of the Airline Deregulation Act, codified at 49 U.S.C.

§ 1305(a)(1) and which includes language identical to that of § 14501(c)(1), does not create a right and may not be enforced through § 1983. 784 F.2d at 97–98; *see also Western Air Lines,* 817 F.2d at 225. Because § 14501(c)(1) may not be enforced through § 1983, the district court erred by awarding attorneys' fees to Loyal Tire under § 1988; such fees are available only to a prevailing party on a claim under § 1983. *See* 42 U.S.C. § 1988(b).

### B.

█ The court below did not address Loyal Tire's claim under the dormant Commerce Clause. The district court determined that it need not reach Loyal Tire's Commerce Clause claim given its conclusion that Woodbury's municipal towing law is preempted by § 14501(c)(1). Loyal Tire argues that, because it sought compensatory damages against Woodbury under § 1983 for purported violations of the dormant Commerce Clause, the district court's grant of injunctive relief on preemption grounds did not render it unnecessary to reach the constitutional question. We agree.

In its complaint, Loyal Tire sought both injunctive relief barring further enforcement of Woodbury's towing law and damages for Woodbury's past violations of Loyal Tire's rights. The district court's grant of prospective injunctive relief did not fully resolve Loyal Tire's claims and thus did not render consideration of its dormant Commerce Clause claim under § 1983 unnecessary. We have acknowl-

---

**7.** Before the Supreme Court's ruling in *Gonzaga,* the Sixth Circuit held that § 14501(c)(1) may be enforced under § 1983. *Petrey v. City of Toledo,* 246 F.3d 548, 565 (6th Cir.2001). The *Petrey* court applied the two-step inquiry of *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), in holding that towing

companies are an intended beneficiary of § 14501(c)(1)'s prohibition on state and local regulation of motor carriers and that the statute has no "comprehensive enforcement mechanism that would preclude § 1983 relief." 246 F.3d at 565. Applying the analysis set forth in *Blessing,* as clarified by *Gonzaga,* we reach a different conclusion.

edged that "a viable claim for damages generally avoids mootness of the action." *Cook v. Colgate Univ.*, 992 F.2d 17, 19, 21 (2d Cir.1993). We therefore conclude that the district court erred in failing to reach Loyal Tire's dormant Commerce Clause claim and remand for the district court to consider that claim in the first instance. *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir.2005) (remanding for the district court to consider in the first instance an issue presented to it but which it had not ruled upon). The district court should consider on remand, *inter alia*, whether Loyal Tire has suffered an injury resulting from a burden on interstate commerce that gives it standing to challenge Woodbury's municipal towing law under the dormant Commerce Clause. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (stating that "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates," and finding the plaintiff to have suffered indirect injury from a burden on interstate commerce); *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 267, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (holding that in-state liquor wholesalers had standing to raise a dormant Commerce Clause challenge to a Hawaii tax regime exempting certain alcohols produced in-state from liquor taxes because the tax raised the price of the imported goods they sold relative to the exempted in-state beverages).

### C.

We affirm the district court's dismissal of Loyal Tire's due process and equal protection claims. We reject Loyal Tire's equal protection claim because it was not pleaded or properly advanced before the district court In arguing that the district court erroneously dismissed its due process claim, Loyal Tire relies solely on *Cowan v. Corley*, 814 F.2d 223 (5th Cir. 1987), in which the plaintiff claimed that he was deprived of his opportunity to earn a livelihood by being summarily excluded from a county wrecker association after having complained about the association's method of assigning work. Loyal Tire contends that its due process rights were violated by the purported discriminatory enforcement of Woodbury's pre–2003 municipal towing law and when the town suspended its towing license, purportedly without proper notice, in 1995. The former claim involves discriminatory treatment, not the deprivation of a property or liberty interest on the theory of *Cowan*, and we therefore reject it. We reject the latter claim as time-barred. *See Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (noting that we borrow New York's three-year statute of limitations applicable to personal-injury actions when considering the timeliness of claims under § 1983).

### III.

Loyal Tire alleged in the fifth cause of action of its complaint that the town board, including Supervisor Conroy, and Chief Kwiatkowski had conspired to violate its rights under the Constitution and laws of the United States. The district court dismissed this claim against Conroy on the basis that she is entitled to immunity for her role in enacting Woodbury's municipal towing law in 2003 and against Kwiatkowski on the basis that he is entitled to absolute immunity under the First Amendment or, alternatively, to qualified immunity for expressing his support of the draft municipal law. On appeal, Loyal Tire contends that Conroy and Kwiatkowski face liability not for their participation in legislative deliberations, but for their discriminatory enforcement of Woodbury's prior towing law.

152

Loyal Tire has conceded that Conroy and Kwiatkowski have absolute immunity from personal liability for their participation in the legislative process. With respect to Loyal Tire's contention on appeal that Kwiatkowski is liable for discriminatorily enforcing Woodbury's pre–2003 towing ordinance and that Conroy bears supervisory liability for that discriminatory enforcement, Loyal Tire failed to plead that claim in its complaint. Loyal Tire specifically alleged in its fifth cause of action that Kwiatkowski *conspired* with the town board to violate its rights, and its theory on appeal is not consistent with its pleading. We thus reject Loyal Tire's claim that the district court erred in dismissing its fifth cause of action. We express no view, however, as to whether Conroy or Kwiatkowski is entitled to qualified immunity on Loyal Tire's claim under the dormant Commerce Clause given that we remand that claim to be considered by the district court in the first instance.

## CONCLUSION

For the foregoing reasons, we AFFIRM so much of the district court's judgment as granted summary judgment to Loyal Tire on its preemption claim under 49 U.S.C. § 14501, dismissed Loyal Tire's due process and equal protection claims, and dismissed Loyal Tire's claims against the remaining individual defendants on immunity grounds. We REVERSE so much of the district court's judgment as granted attorneys' fees pursuant to 42 U.S.C. § 1988 to Loyal Tire on its preemption claim under § 14501. Finally, we REMAND the case for the district court to consider Loyal Tire's dormant Commerce Clause claim in the first instance.